## JOHN A. THOEN *vs.* ROBERT ROCHE.

Argued April 16, 1894. Affirmed April 20, 1894.

No. 8555.

**Reputation as evidence of Federal surveys of land.**

The rule admitting evidence of common repute on the question of boundaries applies to the boundaries established by the United States surveys where the monuments set in making those surveys have disappeared.

Appeal by plaintiff, John A. Thoen, from an order of the District Court of Morrison County, L. L. *Baxter*, J., made February 7, 1893, denying his motion for a new trial.

The defendant, Robert Roche, on June 17, 1875, purchased and has ever since owned and occupied the southeast quarter of section thirty one (31), T. 39, R. 30, in Morrison County. William Roche, defendant's brother, in April, 1878, purchased the northeast quarter of the same section. The line between the two quarter sections was surveyed in 1876 and a highway laid on the line as then located. William afterwards sold his land to the plaintiff and removed to Duluth. Plaintiff had the whole section resurveyed in 1890, by R. J. Batzer and found that it had been inaccurately surveyed originally and that the east half was a mile and thirty four rods long from north to south and contained three hundred and thirty four acres. The government quarter stake on

the east line of the section could not be located and the plaintiff's surveyor divided the half section equally between the two parties. This gave plaintiff a strip of land seventeen rods wide south of the road and he brought this action to recover possession of it. On the trial in March, 1892, the defendant called a witness named Morse who testified that in 1876, Garrison surveyed the road between the two quarter sections and located the east quarter post in the middle of the road, and it had always been recognized and understood by the people of the vicinity as the true location of the government quarter stake. Plaintiff duly objected to this evidence but was overruled and he excepted. Other witnesses also testified under objection to the same general reputation in the vicinity. Defendant had a verdict. Plaintiff moved for a new trial. Being denied he appeals.

*Taylor, Calhoun & Rhodes,* for appellant.

Unless the government monuments could be established, the line was as claimed by plaintiff. There is no dispute but what the line as located by Mr. Batzer is the correct line if the location of these quarter posts cannot be ascertained. To avoid the effect of this, defendant attempted to show that the government quarter stake was actually located further north and in the road. Defendant was allowed under the objection of plaintiff to show that the quarter post as located by Garrison years before, has always been recognized by the people in the vicinity as being the true location of the quarter post on the east side of the section.

The exact location of a purely private boundary cannot be shown by general reputation. This is the general rule as laid down by the leading text books on evidence. 1 Greenl. Ev., § 145; 1 Phillips Ev., § 230; Starkie Ev., 50; *Shutte* v. *Thompson,* 15 Wall. 151; *Chapman* v. *Twitchell,* 37 Me. 59.

Traditional evidence may be admitted in relation to the boundary of parishes, manors and the like, which are of public interest and generally of remote antiquity, but it is inadmissible for the purpose of proving the boundary of a private estate when not identical with one of a public nature. *Hunnicutt* v. *Payton,* 102 U. S. 333; *Ellicott* v. *Pearl,* 10 Pet. 412; *Hall* v. *Mayo,* 97 U. S. 416.

There is no evidence tending to show an agreement between

the parties to the action regarding the line in dispute. The most that can be fairly claimed is, that there was a tacit understanding that the road was the correct line. They made no attempt to settle any dispute and no dispute existed. It was simply the ordinary case of mistake as to the location of the line. *Schraeder M. & M. Co.* v. *Packer*, 129 U. S. 688; *Hass* v. *Plautz*, 56 Wis. 105; *Cronin* v. *Gore*, 38 Mich. 381; *Kincaid* v. *Dormey*, 51 Mo. 552; *Reed* v. *McCourt*, 41 N. Y. 435; *Smith* v. *McNamara*, 4 Lansing, 169.

*G. W. Stewart,* for respondent.

However erroneous the original government survey may have been the monuments that were set must nevertheless govern, even though the effect be to make one quarter section contain much more than another. *McIver* v. *Walker*, 4 Wheat. 444; *Land Company* v. *Saunders*, 103 U. S. 316; *Chan* v. *Brandt*, 45 Minn. 93; *Cottingham* v. *Parr*, 93 Ill. 233.

In making a resurvey the question is not how an entirely accurate survey would locate the lines, but how the original surveys located them. If the actual location of the original land marks can be discovered they must govern. If they are not discovered, the question is, where were they located. And upon that question the best possible evidence is usually to be found in the practical location of the lines made at a time when the original monuments were presumably in existence and probably well known. *Diehl* v. *Zanger*, 39 Mich. 601; *Stewart* v. *Carleton*, 31 Mich. 270; *Smith* v. *Hamilton*, 20 Mich. 433.

A boundary line long recognized and acquiesced in, is generally better evidence of where the true line should be, than is a survey made after the original monuments have disappeared. *Tarpenning* v. *Cannon*, 28 Kans. 665; *Shaffer* v. *Weech*, 34 Kans. 595; *Reinert* v. *Brunt*, 42 Kans. 43; *Stewart* v. *Carleton*, 31 Mich. 270; *Gregory* v. *Knight*, 50 Mich. 61.

The quarter posts are made of perishable material which passes away with the generation in which they were made. By the improvement of the country and other causes they are often destroyed. It is therefore important in many cases that hearsay or reputation should be received to establish their location; but such testimony

must be pertinent and material to the issue between the parties. *Kinney* v. *Farnsworth*, 17 Conn. 355; *Ralston* v. *Miller*, 3 Rand. 44; *Cox* v. *State*, 41 Tex. 1; *Conn* v. *Penn*, Pet. C. C. 496; *Wendell* v. *Abbott*, 45 N. H. 349; *Great Falls Company* v. *Worster*, 15 N. H. 412; *Smith* v. *Powers*, 15 N. H. 546; *Moul* v. *Hartman*, 104 Pa. St. 43; *Boardman* v. *Lessees of Reed*, 6 Pet. 328; *Kramer* v. *Goodlander*, 98 Pa. St. 353; *Child* v. *Kingsbury*, 46 Vt. 47; *Wooster* v. *Butler*, 13 Conn. 309; *Whitehurst* v. *Pettipher*, 87 N. C. 179.

GILFILLAN, C. J.    Ejectment.    The matter at issue is the location of the boundary line between the northeast quarter, owned by plaintiff, and the southeast quarter, owned by defendant, of section thirty-one, this depending on the proper location of the quarter-section post on the east side of the section established by the United States survey.    As is frequently the case, that post has disappeared. It appears that, some sixteen years before the trial, one Garrison, a surveyor, made a survey of the east and west line between the north and south half-sections, and, as he supposed, found where the quarter post of the United States survey had been, and set a stake there; also, that a public highway running through the town east and west was on or near the line between the north and south halves of the section.

The court below permitted, against objection, a witness who was with Garrison at the survey to answer the question, "Did you find, when you were making that survey with Mr. Garrison, the quarter post on the east side of section thirty one?"    The answer to such a question was proper to go to the jury, for, whatever it might be worth, its value was to be tested by further examination as to details.    Such posts are set with a view to their being found and recognized on future surveys, and the parties making such surveys may testify directly that they found them.

The court also admitted, against objection, evidence of common repute in the neighborhood that the stake set by Garrison located correctly the quarter-section post, and also of common repute that the location of the quarter post was right in the center of the highway.    The questions as put to the witnesses were general as to time, and included the time down to the trial.    The general objection

that it was incompetent did not point out with sufficient definiteness the objection that the questions included time after action brought. Had the attention of the court and opposite counsel been called to that objection, it might have been avoided by a slight change in the form of the questions. Where such is the case, the specific objection must be made.

There is considerable difference between the English and many American authorities in the application of the rule which admits evidence of common repute on the question of boundaries. The English decisions confine it to cases of boundaries that are matters of public or common interest, such as boundaries of counties, towns, parishes, or manors. Many American decisions go beyond this, some going so far as to apply the rule to cases of purely private boundaries, where no one has any interest in the question but the two owners of adjoining estates. Some of those are without the support of the reason for the rule. The rule rests on necessity, better evidence of the boundary having ceased to exist, and is justified on the theory that where many persons, members of a community more or less extensive, are interested in a common boundary, they will know where it is, and their common assent will prove what they know.

Boundaries and monuments for boundaries under the United States system of surveys come within the reason for the rule, and within its application, even under the English decisions. In the first place, the establishment of such boundaries is a public act, and not merely a private act or agreement between two owners of contiguous estates. In the second place, it may, and usually does, come to affect the interest of many persons. Thus, the location of the quarter-section post affects a boundary of eight quarter sections and thirty-two quarter-quarter sections. And, in the third place, highways are frequently laid out, and school districts may be established with reference to such boundary lines. We are therefore of opinion the evidence was competent.

The evidence as to an agreement between the plaintiff's predecessor in title and the defendant locating the line between them, and of acquiescence in, and building fences with reference to, the line so located, was not very full, but there was enough to authorize the jury in finding an agreement that would be binding within

the rule, as stated in *Beardsley* v. *Crane*, 52 Minn. 537, (54 N. W. 740.)

Order affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 58 N. W. 686.)