STROHMAIER and others, Appellants, vs. WISCONSIN GAS & ELECTRIC COMPANY and another, Respondents.

*February 6—April 3, 1934.*

For the appellants there was a brief by *Raymond J. Cannon* and *Wolfe & Hart,* attorneys, and *I. B. Padway* of

counsel, and oral argument by *Mr. John L. Newman* and *Mr. Padway,* all of Milwaukee.

For the respondent Wisconsin Gas & Electric Company there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondent village of Pewaukee there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Charles B. Quarles* and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Mr. Quarles.*

FOWLER, J.   The plaintiffs claim : (1) That the defendant Gas Company was negligent in not having a man on the job or within ready call while the work of digging the trenches was progressing to turn off the gas in case of the breaking of service pipes by the contractor, especially in view of the frequency with which the contractor had theretofore severed service pipes; (2) that the court erroneously rejected evidence offered by the plaintiffs of the previous breaking of service pipes by the contractor; and (3) that the contractor was negligent in severing the service pipe connected with the Strohmaier building, and that as the work was being done for the village the village is responsible under the doctrine of *respondeat superior.*   It is also claimed that the negligence of the defendants in the respects stated proximately caused the explosion and the resulting injuries to the plaintiffs.

(1) (2) One of the grounds of negligence alleged in the complaint is that the Gas Company "failed to maintain an employee in and about the work to turn off the gas in the event that a gas main or gas pipe broke in the course of the work."   As bearing upon the defendant Gas Company's duty in this respect, *Portland Gas & Coke Co. v. Giebisch,* 84 Oreg. 632, 165 Pac. 1004, is cited.   That case holds that where a sewer was being laid parallel and in close proximity to gas mains from which service pipes led from the mains to residences at frequent intervals, the Gas Company owed

its patrons the duty of patrol and inspection to protect them against the negligent severance of their service pipes during the laying of the sewer. The rule was not laid down in a case involving injury from escaping gas, but the Gas Company maintained inspection and patrol during the progress of the work, and a charge therefor was included in a claim of the company against the contractor who did the work to recover damages sustained through his negligence, and this was held a proper charge so far as such inspection and patrol became necessary because of the contractor's negligence. If a gas company owes this duty to its patrons as held in the case cited, it is, of course, responsible to its patrons for injuries sustained through negligence in the performance of that duty.

Obviously circumstances might exist such as to make it the duty of the Gas Company, in the exercise of ordinary care, to have a man on the job or at immediate call for the purpose of turning off gas upon the breaking of a main or pipe. It is manifest that if the contractor frequently broke pipes in the progress of his work there was more reason for holding that ordinary care required the presence of a man on the job for the purpose stated than if he had been working several months without breaking any pipes at all. The plaintiffs were entitled under their complaint to show any and all facts that bore upon the question of ordinary care in the respect stated. The trial court ruled that evidence of previous breakage of pipes was immaterial and refused to permit the plaintiffs to show the facts in this regard. This was prejudicial error and requires reversal of the case. It is contended that no such issue as prior breakage is raised by the pleadings. But this is merely evidence tending to prove the issue raised as to negligence of the Gas Company, and the pleading of evidence is not only unnecessary but improper. It is also urged that it is a collateral matter and that courts

will not receive evidence of such matters. It is collateral to the direct issue whether the Strohmaiers' pipe was broken and whether the contractor was negligent, but it nevertheless bears on the question of ordinary care of the Gas Company in respect to having a man at hand to shut off gas, and is thus relevant to that issue and competent.

It is suggested in the briefs that the Strohmaiers had not given permission to dig the trench in their alley and that the contractor was thus a trespasser, and that this somehow affects the question of liability. Passing the point whether if the premises were correct the conclusion would follow, it is sufficient to say that the Strohmaiers knew from early morning until the pipe was severed that the trench machine was operating in their alley. They did not order it off or demand that the contractor cease work, or protest against his continuing work. In this situation it must be held that they consented to the digging of the trench in their alley and the contractor cannot be regarded as a trespasser.

The defendant Gas Company claims that in any event it is only responsible for the results of breakage in the public streets or alleys; that it had no notice that the trench was to be dug or was being dug in the private alley; and that it owed no duty to the plaintiffs until it received such notice. But presumably the same likelihood of breakage of service pipes existed from digging in the public alley as from digging in the private alley. The duty, if such there was under the circumstances, was to use ordinary care towards protecting its patrons against injuries reasonably to be anticipated from the use of the trench machine, wherever it might be working. The danger from that source was presumably the same whether the machine was used in one place or the other. Use of the means, if any, it was obligated to use to protect against injury from breakage in the public alley, would have been as effective towards preventing injury from

breakage in the private alley as in the public. The Strohmaiers were entitled to the protection of that means the same as other patrons, if the company had knowledge, or from the circumstances should have known, that the trench machine was at work at the time their service pipe was severed.

(3) The nonsuit against the village was proper upon two grounds:

1. The rule that where work is performed by an independent contractor the doctrine of *respondeat superior* does not apply, applies to municipalities as well as to natural persons. *Kuehn v. Milwaukee,* 92 Wis. 263, 65 N. W. 1030; *Nemet v. Kenosha,* 169 Wis. 379, 172 N. W. 711.

The plaintiffs contend that the village under the contract retained such control of the conduct of the work as it progressed as to make the contractor an employee of the village as distinguished from an independent contractor. The contract is in evidence. The plaintiffs have called attention to such provisions of it as they contend support their contention. We discover nothing in any of these provisions to support it. It would add nothing to the law or be of any aid to the parties or to the bar to set these provisions out in detail. We have examined the entire contract with care and discover nothing in it that differentiates it in the respect under consideration from the ordinary building contract or the ordinary contract for public work. The progress and management of the work remained at all times within the direct control of the contractor. The village might, under certain circumstances, direct the method by which joints should be made and pipes should be lowered into the trench, but in such case the contractor retained control of the workmen and of the operations employed in carrying out the method designated by the village.

2. The trench was being dug solely to supply a fire hydrant to be located in the public street. This was done in pursuance of the governmental function of furnishing fire

protection. A municipality operating a waterworks system acts in a proprietary capacity, and is responsible for negligence to the same extent as a private person or corporation. But in placing a fire hydrant it is otherwise. *Morgan v. Village of Stowe*, 92 Vt. 338, 104 Atl. 339. Digging a trench to install a main to lead to a fire hydrant is done in performance of a governmental function the same as is placing a fire hydrant.

For the reasons above stated we are of opinion that the granting of the motion for a nonsuit as against the village was proper and the judgment of nonsuit in its favor should be affirmed; and that the granting of the motion for a nonsuit as against the defendant Gas Company was error and the judgment of nonsuit in its favor should be reversed.

*By the Court.*—The judgment of the circuit court in favor of the village of Pewaukee is affirmed; the judgment in favor of the defendant Wisconsin Gas & Electric Company is reversed, and the cause is remanded for a new trial as against the Wisconsin Gas & Electric Company.

FAIRCHILD, J., dissents.