## CLARA LENZMEIER v. ANNA ESS AND OTHERS.[1]

January 8, 1937.

No. 31,077.

*W. F. Odell,* for appellants.
*H. A. Irwin,* for respondent.

HOLT, JUSTICE.

Defendants appeal from the order denying their motion for a new trial. The controversy is the boundary line between the southeast quarter of the northwest quarter, owned by plaintiff, and the southwest quarter of the northwest quarter, owned by defendants, in

[1]Reported in 270 N. W. 677.

section 11, township 115, of range 23, Scott county. Plaintiff also owns government lot 2, north of her described forty, and defendants own government lot 1, north of their forty. The lands are near the westerly limits of the city of Shakopee. The right of way of the Chicago, St. Paul, Minneapolis & Omaha Railroad Company crosses the premises of the parties in a northeasterly direction near the northerly boundary. The old territorial Shakopee-Jordan road, now paved trunk highway No. 169, enters defendants' south line about 600 feet west of the southeast corner of the southwest quarter of the northwest quarter, and runs in a northeasterly direction, curving to the east as it enters and crosses plaintiff's forty. Adjacent to the right of way of the Omaha railroad and perhaps a few rods north thereof is the parallel right of way of the Chicago, Milwaukee & St. Paul Railroad Company. Defendants' predecessors, since before 1866, owned and operated a brewery with appurtenant structures located between the right of way of the two railroads. Their dwelling, barns, and farm buildings were immediately south of the Omaha railroad right of way. The farm buildings of plaintiff were also between the right of way of the latter railroad and the Shakopee-Jordan road. From the earliest times most of the land of both parties south of the railroads was farmed. Since before 1866 a road has led from the Shakopee-Jordan road along or near the east line of defendants' premises to their home and to the brewery. All witnesses refer to it as a cartway, but there is no evidence of its being legally laid out or maintained by public authority. In November, 1934, defendants erected a permanent fence on the east line of this cartway, cutting off its access by plaintiff, precipitating this lawsuit to establish the boundary line between the premises and to compel defendants to remove the fence they erected, on the ground that it stands on plaintiff's land. The court made findings establishing a boundary line between the parties, and the cartway mentioned a lawful right of way, one rod in width, directly east of the true boundary line and running from trunk highway No. 169 to and across the right of way of the Omaha railroad company, and directing defendants to remove the fence erected by them in November, 1934, upon plaintiff's land. Defendants moved for amended findings or a new trial.

12

The many assignments of error have been conveniently grouped and discussed under two principal contentions, *viz.*, (a) The proof is insufficient to locate and establish a true boundary line between the lands of the parties; and (b) the evidence was such that the court should have found that there had been a practical location of the boundary between the parties along the line where defendants in November, 1934, erected the fence.

Under the first proposition there is some contention that plaintiff produced no proof of title to the land in dispute. The answer may have put plaintiff's title to the strip involved in issue, but we think the trial all the way proceeded on the assumption that plaintiff was the owner in fee of the land of which she, in the complaint, alleged ownership. Likewise it was assumed, all through the trial, that defendants owned the title in fee to that part of section 11 lying west of plaintiff's land. The most doubtful point in the case arises upon the reliability of the survey and location of the boundary between the lands of the parties by Mr. Childs, a duly registered and licensed surveyor and engineer, and the official highway engineer of the county of Scott. His qualifications are not questioned. He has practiced his profession since 1907. He resided in Shakopee. He made this survey in November, 1935. Some two years before he had made a survey in the same section and run lines from the same assumed quarter posts. There can be no question of the competency of Mr. Childs to make an accurate and reliable survey of government subdivisions of lands. The doubt of the accuracy of this survey springs from the manner in which it was made; that is, from the lack of data by which to determine its correctness. Over objection, the plat of the survey was received in evidence, and the court adopted the plat as showing the true location of the boundary line between the parties and establishing it as such. As to section 11, Mr. Childs testified that no corners or quarter corners of the government survey are to be found and no witness or bearing tree remains; that he has been acquainted from 10 to 15 years with this condition of the section; and that corner fence posts at the north, west, and south quarter posts of the section have been assumed to stand where the respective quarter posts

·were placed by the original government survey; that he believes that his survey follows the government survey; and that he now knows of no method by which the government survey can be more accurately adhered to than by assuming the said three corner fence posts to be placed where the corresponding quarter posts of the government survey were.

This testimony of the surveyor leaves much to be desired. There was no effort made to locate any government corner of an adjoining section. With field notes of the government survey, one would think that a competent surveyor would be able, in some degree, to verify assumed corners. There is no question of Mr. Childs' qualification, and we cannot therefore say that the learned trial court was not justified in accepting his testimony that there was no method to locate the corners or quarter corners of the government survey other than by assuming the corner fence posts which now, for some 10 to 15 years, by common consent or reputation, have been regarded as occupying the place of the stakes of the original survey. So regarding the testimony of Mr. Childs, there was proper foundation laid for his survey, and there could be no valid objection to the receipt in evidence of the plat thereof, made by him, for its accuracy is not questioned if the assumed quarter corners were correct starting points. Thoen v. Roche, 57 Minn. 135, 58 N. W. 686, 47 A. S. R. 600.

At first blush there would seem an inconsistency in finding a cartway by prescription located on plaintiff's land although it is evident that its use from the start was for ingress and egress of the owners and occupants of defendants' farm. To their home city, Shakopee, those who owned or occupied plaintiff's land were nearer by going east to the Shakopee-Jordan road. If there were nothing in the evidence except this cartway, the conclusion would be near at hand that it was located on the line dividing the lands of the owners. And that therefore the court should have found the center of the cartway the boundary line established by common consent. Defendants, however, insist on a line by practical location directly east of the cartway, that is, along the east line or border of the cartway. Their testimony tended to prove that ever since their

premises were occupied the south part of the forty was under cultivation and was inclosed by fences, a worm rail fence being constructed and maintained by their predecessors on the line where the fence was erected in November, 1934; and that during the same time a fence was maintained along the north boundary of the Shakopee-Jordan road, with gates at the cartway. To those who know of the conditions existing in early days the testimony appeals strongly, for then fields had to be fenced because the stock roamed at will over lands that were not inclosed. And what would be more rational than that those who owned and farmed defendants' farm and operated the brewery should place a fence on what was considered the boundary line with this cartway as close to it as practicable? It is true, there was a road to Shakopee easterly from the brewery, but to Jordan over the Shakopee-Jordan road it was more convenient and nearer to travel north along the east boundary of the farm. However, the evidence of defendants' witnesses was not without dispute as to the fence and gates. The witnesses for plaintiff claimed that the only fence east of the cartway was a temporary fence erected and maintained by plaintiff, after the grain was harvested and removed, so as to confine the stock which in the fall would be let in on the cultivated part of the farm to utilize the pasturage there available. Other considerations may have inclined the court not to place a great deal of reliance upon there ever being an intention of the owners of these farms to locate on the true boundary either the alleged fence or cartway. The original or government survey placed stakes or monuments only at the corners and quarter corners of the sections. Hence, when the land here in question came into the hands of the different owners no stake or monument placed by the government survey marked the boundary line between them. And there is no evidence tending to show that the owners of these two farms ever agreed upon or discussed the boundary line between them. So a practical location was not proved within the rules stated in Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; Benz v. City of St. Paul, 89 Minn. 31, 93 N. W. 1038; Marek v. Jelinek, 121 Minn. 468, 141 N. W. 788; Roy v. Dannehr, 124 Minn. 233, 144 N. W. 758; 7 Minn. L. Rev. 569, 572.

The evidence was not such as to warrant the finding of the location of a boundary line by consent where defendants erected the fence in November, 1934, and where they claim it should have been located. Such a finding was justified by the evidence in Nadeau v. Johnson, 125 Minn. 365, 147 N. W. 241.

Defendants have no good reason to complain of the fact that the court recognized the cartway as a lawful road which none of the parties could obstruct, even though it is wholly on plaintiff's land. A right of way is but an easement, and the acquisition of such easement by persons or the public leaves, as a rule, the legal fee title where it was when the easement was acquired. So the finding in respect to locating the cartway upon plaintiff's land is not necessarily in conflict with the one establishing the true boundary line between the farms directly west of the westerly boundary line of the cartway. Although the evidence is not very satisfactory, either as to the reliability of the survey or the location of old fences, perhaps necessarily so, because of the lapse of time which obliterates stakes in the ground and dulls the memories of witnesses who now undertake to testify to what they observed 60 years ago, or longer than that, we think the findings made by the trial court should not be disturbed by this court.

The order is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

MR. JUSTICE PETERSON, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.