# MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY AND ANOTHER v. L. J. ELLSWORTH AND ANOTHER.[1]

August 15, 1952.

No. 35,739.

[1]Reported in 54 N. W. (2d) 800.

*Marshall S. Snyder,* for appellants.

*C. W. Wright, Richard Musenbrock, William J. Powell,* and *George M. Stephenson,* for respondent Minneapolis & St. Louis Railway Company.

CHRISTIANSON, JUSTICE.

This is an appeal from a judgment of the Hennepin county district court which determined the boundary line between land of plaintiff Minneapolis & St. Louis Railway Company and land of defendant L. J. Ellsworth and enjoined defendant from maintaining his fence on plaintiff's land. Lampert Yards, Inc., owner of a leasehold interest in plaintiff's land, was joined as plaintiff, and the First Federal Savings & Loan Association of Minneapolis, owner of a mortgage on defendant's land, was joined as defendant.

Both parcels of land in question are within SE¼ of section 24, township 117, range 22, located in Hennepin county. Defendant Ellsworth is the registered owner of lot A, West Minneapolis, according to the plat thereof recorded in the office of the register of deeds for Hennepin county. Lot A is adjoined on the south by land of which plaintiff railway company is the record owner. The plat of West Minneapolis designates the north line of SW¼ of SE¼ of section 24 as the south boundary of lot A. The warranty deed by which plaintiff railway company acquired title designates the same north line of SW¼ of SE¼ of section 24 as the north boundary of plaintiff's land.

The main question in this case is the proper location of said north line of SW¼ of SE¼ of section 24.

The referee to whom the case was referred found the position of the line to be that which plaintiffs contend it to be, and the district court adopted the referee's findings. Plaintiff railway company had a survey made by Lee McNally, a registered civil engineer and surveyor of many years' experience, who appeared as witness for plaintiffs. He had served as city surveyor for the city of Hopkins, wherein the lands in question are located, for about 14 years. McNally, in making the survey, bisected the line between the southeast corner and the east quarter-section corner of section 24 and the line between the south quarter-section corner and the center of section 24. He then connected the mid-points of the two bisected lines to locate the north line of SW¼ of SE¼. Defendants do not question the surveying procedure used by McNally to locate the line. However, they strongly contest the validity of McNally's starting points, namely, the southeast corner, the east quarter-section corner, the south quarter-section corner, and the center of the section. Although the original evidence of the section corners and quarter-section corners of the United States government survey of 1854 had been obliterated, the district court found that the points at which they were located were established by reputation and circumstantial evidence and the records of plats in section 24 and in adjoining sections. Defendants contend that this finding is not supported by sufficient evidence and that the district court erred in denying their motion for a dismissal of the action made at the conclusion of plaintiffs' case in chief and in denying their alternative motion for substituted findings or a new trial.

We shall review at some length the evidence as to the location of the east quarter-section corner of section 24. McNally testified that the corner was marked by an iron post set underground at the intersection of the center line of county road 18 and the north line of Park Ridge Addition to Hopkins. He located this post from ties he himself had made as surveyor in his work around this corner. The basis for his own ties were ties he had obtained from the county surveyor's office from several sets of notes made by different surveyors. He also testified that one of the ties he used corre-

sponded to a tie established by county surveyor Dahl in 1889 when Dahl resurveyed section 24 pursuant to statute.[2] Dahl's notes state that he found the corner from a tie established by the original government survey. The ties obtained in the W. P. A. resurvey of Hennepin county in 1936 locate the same point that McNally's ties locate. McNally testified that the corner he found was generally accepted as the true corner and was used by surveyors to establish land lines in that area and to put in public improvements around this corner. The plat of Park Ridge, Hennepin county, recorded in the office of the register of deeds for Hennepin county, shows the east quarter-section corner to be at the intersection of the center line of Washington avenue (county road 18) and the north line of Park Ridge Addition.

This court held in Thoen v. Roche, 57 Minn. 135, 58 N. W. 686, that evidence of common repute as to the location of a quarter-section post was admissible in a boundary dispute between private parties on the ground that better evidence had ceased to exist. Similarly, this court in Lenzmeier v. Ess, 199 Minn. 10, 270 N. W. 677, upheld a finding that determined a boundary line to be in accordance with a survey based upon quarter-section corners accepted as accurate by common consent or reputation.[3] In the instant case, there was sufficient evidence from which the court could find that the corner McNally located was the corner established by the original government survey.

Defendants argue that, since the iron post located by McNally was underground and not visible, the public generally could not have known where it was and thus no general reputation could have been formed. However, the corner located by McNally had a reputation among those who used the corner and were concerned with its location, and that, in our opinion, is sufficient.

Defendants also urge that the plat of Park Ridge Addition should not have been admitted to establish the location of the corner on

---

[2] G. S. 1878, c. 8, § 125, as amended (now M. S. A. 381.12).

[3] See, also, Clark, Law of Surveying and Boundaries (2 ed.) § 411.

the ground. But, in view of the prior testimony of McNally as to the reputation of the corner, we find no error in the admission of the plat.

It would serve no useful purpose to review at length the evidence as to the location of the southeast corner or the south quarter-corner, which is of the same nature as the evidence already related. We have carefully considered the record and exhibits before us and hold that the evidence is sufficient to support the court's finding as it relates to each of these corners.

The point McNally used as the center of section 24 requires additional consideration. He accepted an iron manhole cover in the center of the intersection of Ninth avenue north and Second avenue north in Hopkins as the center of the section. A. C. Schendel, a civil engineer who appeared as a witness for plaintiffs, testified that he had previously made a survey to locate the center of the section. He established a line from the east quarter-section corner to the west quarter-section corner and a line from the north quarter-section corner to the south quarter-section corner and took the intersection of the two lines as the center of the section. The lines intersected at the manhole cover referred to by McNally. Again, defendants do not quarrel with the surveying method, but question the validity of the corners used as starting points. Upon careful examination of the evidence as to the location of these four corners, we find that it is sufficient to support the district court's finding.

Since the finding as to the location of the survey corners is supported by sufficient evidence and the surveying procedure used by McNally and Schendel is not questioned, it follows that the finding as to the location of the north line of SW¼ of SE¼ must be sustained.

■ Defendants contend that the dimensions of lot A set out on the recorded plat of West Minneapolis cannot be changed by a resurvey, citing Dittrich v. Ubl, 216 Minn. 396, 13 N. W. (2d) 384, as controlling. It is true that this court said in that case (216 Minn. 405, 13 N. W. [2d] 389) :

"* * * A resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in the old plat is not competent evidence of the true line fixed by the original plat."

That case, however, involved a disputed boundary line between two parcels of land included within the plat. Here, one parcel is within the plat and the other is expressly excluded from it. Plaintiffs are not challenging the dimensions of subdivisions within the plat, but are seeking determination of the boundary of the whole parcel of land platted, which happens also to be the boundary of lot A. We have determined that the evidence supports the finding of the referee and the district court as to the location of that boundary. The preceding discussion also disposes of defendants' contention that plaintiffs, having introduced the plat, are estopped from attacking the dimensions contained in their own exhibit.

In 1948, more than six months before this action was commenced, defendant Ellsworth registered his title to lot A in Torrens proceedings pursuant to M. S. A. c. 508. The decree in those proceedings provides that he is the registered owner in fee simple of lot A, West Minneapolis, according to the plat thereof recorded in the office of the register of deeds for Hennepin county. Defendants make three arguments with respect to such registration of title: (1) The district court's findings in the case at bar are inconsistent in that they recognize the Torrens certificate and then attack it; (2) the judgment appealed from is a collateral attack upon the Torrens decree; and (3) defendants should have been permitted to show that plaintiff railway company had knowledge of the Torrens proceedings within six months after entry of the decree therein.

The Torrens proceedings determined that defendant Ellsworth had title to lot A. Plaintiffs do not question his title, but seek to have the boundary between lot A and their own property determined. Section 508.06(11)[4] provides procedure by which the boundary lines of lot A could have been determined in the Torrens proceeding, but defendant Ellsworth did not use this procedure;

---

[4]See, also, Code of Rules for the District Courts of Minnesota, Part II, Rule 11, 27 M. S. A. 650.

thus, the decree in that proceeding did not determine the boundary lines. Defendants, however, stress that part of the Torrens decree which says that defendant Ellsworth is the owner of lot A *according to the plat thereof.* It should be sufficient to repeat that the plat designates the north line of SW¼ of SE¼ of section 24 as the south boundary of lot A. The finding of the location of that line in the instant case does not attack the Torrens certificate, and the judgment in this case does not attack the Torrens decree. Since this action is not an attack upon the Torrens decree, the district court was correct in ruling that evidence of plaintiff railway company's knowledge of the Torrens proceedings within six months of the entry of the decree therein was immaterial.

■ Defendants call attention to M. S. A. 541.023, subd. 1, which provides in part:

"As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, partnership, corporation, state, or any political division thereof, after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, * * *."

Provision is then made for preserving such claims by filing a notice within a certain time. Defendants argue that, since the deed to plaintiff railway company was executed and recorded more than 40 years prior to the commencement of this action and since no notice has been filed, a claim under the deed is barred. However, to take advantage of this provision, defendant Ellsworth's claim of title must be based upon a source of title which has been of record at least 40 years. The source of his title to lot A has been of record for that period, but that source of title covers only the land north of the boundary line. He has shown no source of title whatever to land south of the north line of SW¼ of SE¼ of section 24. It is therefore unnecessary to consider any additional reasons advanced as to why § 541.023, subd. 1, is inapplicable.

■ McNally testified that he found the distance between the southeast corner and the east quarter-section corner to be 2,636.5 feet. On cross-examination, he was asked concerning the center of the section:

"If the true east quarter post was 250 or 260 feet north from the southeast corner, then that manhole cover would not be in the center section."

Defendants assert that it was error to sustain plaintiffs' objection to this question. The referee characterized the question as argumentative, and we think he was correct. In any event, the manner and scope of inquiry on cross-examination is a matter resting largely within the sound discretion of the trial court, and unless a clear abuse of discretion is shown its ruling will not be reversed on appeal.[5] We find no such abuse here. The other errors assigned with respect to defendants' cross-examination of this witness have been examined, but we find no grounds for reversal.

It follows that the judgment of the district court should be affirmed.

Affirmed.

[5]Damrow v. Zauner, 236 Minn. 447, 53 N. W. (2d) 139; Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; Schaedler v. New York L. Ins. Co. 201 Minn. 327, 276 N. W. 235.