# WILLMAR GAS COMPANY, INC., v. AMOS DUININCK AND OTHERS, *d. b. a.* DUININCK BROS. & GILCHRIST.[1]

April 17, 1953.

No. 35,918.

*Freeman, Larson & Peterson* and *Leo J. Lauerman,* for appellants.
*Roy A. Hendrickson* and *George E. Hulstrand,* for respondent.

[1]Reported in 58 N. W. (2d) 197.

KNUTSON, JUSTICE.

Appeal from an order denying defendants' motion for a new trial.

After a trial resulting in a verdict for plaintiff, the trial court granted defendants' motion for judgment notwithstanding the verdict. On appeal, we reversed. Willmar Gas Co. Inc. v. Duininck, 236 Minn. 499, 53 N. W. (2d) 225. Thereafter, defendants' motion for a new trial was denied, and this appeal is from the order denying such motion. The facts are sufficiently stated in our former opinion and will not be repeated here except insofar as it is essential to a determination of the questions now presented.

The appeal now before us raises two questions not heretofore determined:

(1) Did the court err in denying a new trial for misconduct of counsel in his closing argument?

(2) Did the court err in denying defendants' motion for leave to amend their complaint to allege contributory negligence after both parties had rested or in refusing to submit to the jury the issue of plaintiff's contributory negligence in the absence of such amendment?

■ The argument of plaintiff's counsel upon which defendants predicate their motion for a new trial does not appear in the record. At the close of the argument, counsel for defendants objected to the portion of the argument which they now contend was prejudicial in these words:

"* * * we object to that portion of the argument of plaintiff's counsel in which he argued that this company has a duty to keep the gas rates low for the people of Willmar, which he argued in words or substance, that if the plaintiff loses gas it would have to charge more to the people of Willmar, on the grounds that it is highly prejudicial and on the further grounds that there is no evidence that rates are fixed by them. My understanding is that they are fixed by the Railroad and Warehouse Commission."

The trial court was requested to instruct the jury accordingly. In its charge to the jury the court said:

"One other matter that I think you should not let influence you in your decision at all. I believe that Counsel argued that the company had a duty to keep rates low for the people of Willmar and that if it loses, the plaintiff argued, if it loses gas it would have to charge more to the people of Willmar for that gas. Now of course there is no evidence about that and it should not be considered by you in determining the issues of this case."

At the close of its instructions to the jury the trial court asked whether there were any further suggestions, and both parties answered in the negative. No further exception was taken to the argument referred to, and apparently defendants' counsel was satisfied that the court had properly taken care of the matter. The argument, if made as indicated by the objection and the court's instructions, was improper, but the denial of a new trial for such misconduct usually is left to the sound discretion of the trial court. The Marckel Co. v. Raven, 186 Minn. 125, 242 N. W. 471. We believe that the trial court adequately took care of the matter and that under the circumstances of this case there was no abuse of such discretion.

■ Defendants' answer does not allege contributory negligence as a defense. After both parties had rested, counsel for defendants moved the court—

"to amend Defendants' answer to allege as and for a further defense that if plaintiff sustained any injury or damage, it was caused or contributed to by its own negligence in order to conform to the testimony."

The court denied the motion. No further exception was taken, nor was the court requested to charge the jury on the issue of contributory negligence in the absence of such amendment. The court did not so charge. At the close of the court's instructions to the jury, defendants' counsel did except to the failure to give or submit to the jury the question of contributory negligence, and error is now assigned on the court's refusal to permit the requested amendment

176

and the court's failure to submit to the jury the issue of contributory negligence.

Whether leave to amend a pleading should be granted is a matter resting largely in the discretion of the court. 2 Pirsig's Dunnell, Minn. Pl. (3 ed.) § 1685. Where it appears that a matter has been litigated by consent, an amendment to conform to the evidence should be allowed almost as a matter of course. However, parties seeking to amend a pleading must move with reasonable diligence. Sundberg v. Goar, 92 Minn. 143, 99 N. W. 638. That is especially true where the amendment seeks to inject into the case a new issue, or a new defense, that may necessitate additional evidence on the part of the adverse party to counteract that which the moving party seeks to introduce or claims has been admitted, which additional evidence might have been introduced had it been known that such defense was in issue. Under the circumstances in this case it was not an abuse of discretion to deny defendants' motion to amend at the close of the case.

■ If, however, contributory negligence appears from plaintiff's own evidence or from evidence unobjected to, it may be taken advantage of even though not pleaded. Blakely v. Le Duc, 19 Minn. 152(187); Woodruff v. Bearman Fruit Co. 108 Minn. 118, 121 N. W. 426; Mellon v. G. N. Ry. Co. 116 Minn. 449, 134 N. W. 116; Erickson v. G. N. Ry. Co. 117 Minn. 348, 135 N. W. 1129, 39 L.R.A.(N.S.) 237; Forseth v. Duluth-Superior Transit Co. 202 Minn. 447, 278 N. W. 904; 2 Pirsig's Dunnell, Minn. Pl. (3 ed.) § 1462; 4 Dunnell, Dig. & Supp. § 7060. This rule is closely analogous to the rule that, where an issue has been tried by consent, an amendment to the pleading should be liberally allowed. It is therefore necessary to consider whether contributory negligence of plaintiff appears either from plaintiff's own evidence or from other evidence admitted without objection.

■ Defendants' contentions that the jury could find contributory negligence is predicated upon evidence in the case that plaintiff had complete maps and plats of its gas lines available, that it kept records of its service connections in its office, and that the city or

defendants were not furnished with copies of such plats or maps and upon the further evidence that prior to the break in its lines here involved another service line had been torn up on July 23, 1948.

Defendants rely principally upon Strohmaier v. Wisconsin Gas & Elec. Co. 214 Wis. 564, 253 N. W. 798, and Portland Gas & Coke Co. v. Giebisch, 84 Ore. 632, 165 P. 1004, L. R. A. 1917E, 1092.

In the Strohmaier case, a contractor, pursuant to a contract with the village, was digging trenches with a trench digger preparatory to laying water and sewer pipes. In the process, gas service pipes of defendant were cut and gas escaped into a building which was destroyed by the resulting explosion and fire. Plaintiff claimed that several other service gas pipes had been severed during the progress of the work and that defendant had knowledge thereof. The trial court refused to admit evidence showing such facts, and on appeal the supreme court of Wisconsin reversed the judgment for the defendant, holding that circumstances might exist such as to make it the duty of the gas company to have a man on duty in the exercise of ordinary care for the purpose of shutting off the gas upon the breaking of a pipe. The Wisconsin court said (214 Wis. 568, 253 N. W. 800):

"* * * It is manifest that if the contractor frequently broke pipes in the progress of his work there was more reason for holding that ordinary care required the presence of a man on the job for the purpose stated than if he had been working several months without breaking any pipes at all."

Portland Gas & Coke Co. v. Giebisch, *supra,* was a suit brought to restrain defendants, engaged in the construction of a sewer under a contract with the city, from negligently interfering with plaintiff's gas mains and for damages resulting from such alleged negligence. Included in the damages claimed by plaintiff was an item covering the cost of patrolling the streets on which defendants were working. On appeal this item was reduced, the court holding that the evidence failed to establish the reasonableness of the charge. With respect to the duty of plaintiff to patrol the streets, the court said (84 Ore. 636, 165 P. 1005):

"* * * It was the duty of plaintiff to protect residents and property owners in the neighborhood from damage arising from the escape of gas: * * * The sewer constructed by defendants paralleled plaintiff's gas-mains for fourteen blocks; at frequent intervals service pipes ran from the mains to houses. Even if defendants had performed their work with care, plaintiff would have been chargeable with the duty of patrol and inspection. This item of plaintiff's claim will therefore be reduced by $500. We are convinced that the remainder is an adequate sum to cover the reasonable expense of such inspection and superintendence as are chargeable to defendants' negligence."

It is evident that the Oregon court, in allowing the claim in part, did not intend to place on the owner of the gas mains the absolute duty of discovering, at its peril, breaks due to the contractor's negligence. Both cases involve the duty of the owner of gas lines to its customers and others who might be injured in case of a break in its lines. They do not involve the duty of the owner of such lines to the contractor who negligently causes the breaks. That is the issue before us. In any event, the cases are clearly distinguishable on their facts from the one now before us. In the Strohmaier case it must have been known to everyone that the trench digger, when operating, would in all probability cut or break any pipe crossing its path. Similarly, in the Oregon case it was evident that a sewer trench would cut far below the gas pipes. In the Strohmaier case several pipes had been cut. In the case before us, while it is true that the evidence discloses that one pipe had been broken in prior work, that was during the time that the main excavation was being performed.

At the time the service line involved in this action was torn up, the main job of excavating the street to the proper level had been completed. There is no showing that plaintiff had any knowledge that additional work would be done at the time the damage here involved occurred nor that, if such work were done, it would cut deep enough to damage plaintiff's gas pipes. Neither is there any showing that defendants ever requested plats or maps of plaintiff's

service lines. The evidence does show that such plats and maps were available to defendants had they desired to see them. Under these circumstances it would be unreasonable to charge plaintiff with the duty of constantly watching the operations over which it had no control to ascertain, at its peril, when defendants intended to proceed with such work as might damage its service lines. Rather, the duty should rest upon defendants to notify plaintiff when they intended to proceed with the work and to ascertain whether service lines of plaintiff were located in such places that they might be damaged if defendants proceeded with the work. At the least, it should be defendants' duty to promptly notify plaintiff if such lines were broken in order that the damage might be repaired promptly. It would place an unreasonable burden upon plaintiff were we to require it to follow all stages of a street improvement project and to constantly follow the equipment of a contractor doing such work to see that none of its lines were damaged.

Under the evidence in this case the court properly omitted to submit the issue of contributory negligence.

Affirmed.