## MAE EVELYN RANDALL AND ANOTHER v. GOODRICH-GAMBLE COMPANY.[1]

April 29, 1955.

Nos. 36,188, 36,189.

---

[1]Reported in 70 N. W. (2d) 261.

*Clifford W. Gardner, Robert P. Liesch,* and *Charles Alan Wright,* for appellants.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *D. W. Nord,* for respondent.

DELL, CHIEF JUSTICE.

Action by Mae Evelyn Randall for injuries which she alleges resulted from the application to her ankle of "Hoff's Liniment," a compound manufactured and sold by defendant. Her husband, Ira Randall, instituted a companion action for damages resulting to him because of such injuries. The actions, which were tried together, are based on the claim that defendant was negligent in the manufacture and sale of the product.[2] The jury returned verdicts for defendant in both cases. These are appeals from orders denying plaintiffs' motions for judgment notwithstanding the verdict or for a new trial.

On appeal, plaintiffs contend that the evidence established defendant's negligence as a matter of law and that the court erred in not directing a verdict or ordering judgment notwithstanding the verdict for them on this issue. They also urge misconduct on the part of opposing counsel and errors in the admission or exclusion of certain evidence and in the instructions as hereinafter detailed.

The testimony of plaintiffs and their witnesses is substantially as follows: Mr. Randall purchased the Hoff's Liniment sometime between 1944 and 1945. Its container remained unopened upon a shelf in plaintiffs' bathroom until about February 27, 1947. About that date, Mrs. Randall, then 71 years of age, sprained her ankle while on a shopping trip. The next day her ankle pained to some extent, and, after reading directions on the bottle of Hoff's Liniment, she applied some of it to her ankle and also wrapped the ankle in a silk cloth soaked with the liniment. Several hours later she noticed the ankle was red and had commenced to swell. At about 10 p. m. that evening, she called Dr. Kenneth R. Larson, who diagnosed a chemical burn. Dr. J. Willard Edwards, who examined her a few days later, confirmed this and also found an ulceration on the right side of her foot.

Because of this condition, she was hospitalized between March 5, 1947, and May 16, 1947. While in the hospital, she underwent a skin graft on her ankle over an area approximately 4 x 9 inches to cover

---

[2]These cases were before this court in a previous appeal. Randall v. Goodrich-Gamble Co. 238 Minn. 10, 54 N. W. (2d) 769.

the ulceration, but her ankle has remained ulcerated since that time and testimony was submitted that this condition will be permanent.

Defendant submitted evidence to the effect that Hoff's Liniment had been manufactured by it for the past 60 years under a master formula which it owned; that it is an emulsion containing turpentine, camphor, ammonia carbonate, ammonia water, castile soap, and ordinary tap water. All ingredients, except the water, were purchased by defendant from John Powell & Company, E. I. DuPont Company, and W. H. Barber Company, firms recognized as reputable sources of supply. All ingredients, except the water, came under the United States Pharmacopoeia or the National Formulary certification. Other than the soap, they were not tested prior to their inclusion in the compound, and the finished product was not tested as to its conformity to the master formula. The liniment was compounded under the supervision of a graduate chemist, however, and all ingredients therein were double checked as to quantity and weight by two of defendant's employees.

■ We cannot escape the conclusion that the issue of negligence here was one of fact for the jury and that the evidence is sufficient to sustain its determination thereon. In the trial, which consumed many days, substantial testimony was submitted by both parties. It was for the most part hopelessly conflicting, and in the end, the obligation of determining the truth thereof rested with the jury. Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; Holz v. Pearson, 229 Minn. 395, 39 N. W. (2d) 867; see, 1 Dunnell, Dig. (3 ed.) § 415a.

■ Illustrative thereof are the following references:

Dr. Kenneth R. Larson and Dr. J. Willard Edwards, the attending physicians, and Hoy Cranston, who was qualified as an expert in medicine and chemistry, testified that in their respective opinions, Mrs. Randall's condition was the result of a chemical burn. Dr. H. A. Alexander, a specialist in blood vessels of the lower leg, testified that Mrs. Randall was suffering from a hypertensive ischemic ulcer due to an insufficient blood supply to the arterioles. Dr. Orville Ockuly, a dermatologist, likewise testified that her condition was due to an

insufficient blood supply. Dr. Richard Smith testified that he was present as an intern at the hospital on the occasion of Mrs. Randall's admission thereto; that at that time she related to him the medical history of her ailment and said nothing therein concerning an application of Hoff's Liniment.

Victor Roehrich, a chemist, testified that he had analyzed a sample of the liniment from the bottle used by Mrs. Randall and that his analysis showed that it deviated substantially from the master formula. Dr. Ole Gisvold, qualified as an expert, testified that Roehrich's experiment was erroneously conducted and did not include a sufficient number of tests to produce scientifically accurate results. There was further divergence of opinion as to whether the liniment, even if compounded as described by Roehrich, was capable of producing a chemical burn, and as to the custom in the industry with reference to proper methods in the manufacture of products of this kind.

The witnesses, whose testimony is outlined as above, were subjected to extensive cross-examination. In final analysis, their testimony was neither totally impeached nor demonstrated to be entirely correct and consistent. In such a situation, the jury's determination is the final one, and in the light of the conflicts outlined, we cannot hold either that the evidence established defendant's negligence as a matter of law or that the verdicts were manifestly and palpably contrary thereto. See, 1 Dunnell, Dig. (3 ed.) § 415.

Plaintiffs assert that defendant's counsel was guilty of prejudicial misconduct in seeking testimony from one Charles E. Kneissel, who was foreman of the jury in the previous trial of this action. It appears that in that trial the bottle containing the remainder of the liniment used by Mrs. Randall was submitted in evidence and had been retained by the jury during its deliberations and that during this period Mr. Kneissel had applied a portion of it to his ankle to determine the effect thereon. In the present trial, he was called as a witness for defendant, but his proffered testimony to the effect that no ill effects followed the application was rejected. It is plaintiffs'

contention that merely calling him to the stand and submitting the questions which were rejected constituted prejudicial misconduct.

We do not agree with this contention. There is ample authority to establish that the proffered evidence might well have been received as material. The fact that it was developed during the deliberations of the prior jury would not of itself make it inadmissible (see, State v. Ward, 127 Minn. 510, 150 N. W. 209; Caines v. Marion Coca-Cola Bottling Co. 196 S. C. 502, 14 S. E. [2d] 10; 58 Am. Jur., Witnesses, § 151; but see, Rainville v. New York Tel. Co. 260 App. Div. 881, 22 N. Y. S. [2d] 877), but in any event, its rejection eliminates the need of determining that question. In the light of such authorities, however, counsel for defendant would have been derelict in his duty had he not sought to have it received, particularly in view of the fact that plaintiffs had submitted the testimony of several experts as to the effect of any application of the liniment.

Plaintiffs urge that there was misconduct by defendant's counsel in submitting a hypothetical question to Dr. Larson based upon an assertion that Mrs. Randall may have used the liniment from the bottle on several prior occasions. The rule is well established that a fact germane to an inquiry, whether the subject of testimony or otherwise, may in the sound discretion of the trial court be used for testing an expert in cross-examination. As stated in Bonderson v. Hovde, 150 Minn. 175, 178, 184 N. W. 853, 854:

"* * * Counsel may even be permitted on cross-examination, for the purpose of testing the skill and accuracy of the expert witnesses, to ask hypothetical questions pertinent to the inquiry, assuming facts having no foundation in the evidence. Williams v. Great Northern Ry. Co. 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 199. But the range of such cross-examination must rest largely in the discretion of the trial court, and we think there was no abuse of discretion in this case."

See, also, Livingstone v. City of New Haven, 125 Conn. 123, 3 A. (2d) 836; 2 Wigmore, Evidence (3 ed.) § 684. On these principles, we do not feel that the facts outlined warrant a conclusion that the trial court abused its discretion here. See, Minneapolis & St. L. Ry. Co. v.

Ellsworth, 237 Minn. 439, 54 N. W. (2d) 800; Damrow v. Zauner, 236 Minn. 447, 53 N. W. (2d) 139.

■ A further claim of misconduct is grounded upon defendant's counsel's examination of Mrs. Randall. In her direct testimony, she had exhibited her injured leg and ankle to the jury. Later, during the examination of Dr. Ockuly, defendant's counsel requested that the court direct the exposition of her uninjured leg and ankle for the purpose of comparison. This was denied. Defendant's counsel thereupon turned to plaintiffs' counsel and asked the latter if he would consent to this procedure. The latter refused and asserts that, by his being compelled to do so, his clients' actions were prejudiced in the minds of the jury. While the inquiry may well have been germane to the issues and a demonstration such as suggested might have been of material aid to the jury, we feel that defendant's counsel should have abided by the court's ruling. Nevertheless we do not feel that the procedure followed was so materially prejudicial as to require a new trial.

■ Several times during the trial, defendant's counsel sought to elicit testimony that the United States Pure Food & Drug Administration, which on occasions had inspected defendant's plant, had at no time made complaint concerning the liniment. Objections thereto interposed by plaintiffs' counsel were sustained for the most part and prevented any great amount of such testimony reaching the jury. Plaintiffs contend that the submission of the questions on several occasions constituted prejudicial misconduct. Ordinarily, silence of departmental officials as to any matter is of doubtful probative value in the absence of evidence that they have given such matters their consideration. Morris, Studies in the Law of Torts, p. 204. In the instant case the negligible amount of testimony received in evidence on the question in controversy can scarcely be held to have been so prejudicial as to require a new trial.

■ Generally, the granting of a new trial for misconduct rests in the discretion of the trial court, and unless there is a clear abuse thereof, its determination of the question will not be reversed. Willmar Gas Co. Inc. v. Duininck, 239 Minn. 173, 58 N. W. (2d) 197;

Maher v. Roisner, 239 Minn. 115, 57 N. W. (2d) 810, 37 A. L. R. (2d) 658; Hillius v. Nelson Hotel Co. Inc. 188 Minn. 336, 247 N. W. 385; Brecht v. Town of Bergen, 182 Minn. 603, 235 N. W. 528; see, 14 Dunnell, Dig. (3 ed.) § 7099b. Here the trial court's memorandum appears to remove any doubt as to an abuse of discretion on this question. There it was stated:

"* * * The case was bitterly contested; there was much evident bad feeling between counsel, and some things were said and done which might better have been omitted. The Court, however, from time to time admonished the jury that they were to consider nothing but the evidence, which was admitted, and in the charge, at the request of the plaintiff, specifically instructed the jury as to the rights of the parties to object to questions, the responsibility of the Court in ruling on them, and again admonished the jury that they should consider nothing except the evidence, which was actually received. * * * I am of the opinion that under all the circumstances the Court would not be justified in setting aside the verdict upon the ground of misconduct."

■ Plaintiffs finally contend that the trial court erred in refusing to instruct the jury as follows:

"* * * the duty to use that degree of care which a person of ordinary prudence should use under the same or similar circumstances applies equally to all since the law does not differentiate between the large and the so-called small engaged in business or otherwise, when this standard applies."

On the issue of negligence, the court instructed the jury that:

"* * * In determining whether or not the defendant in this case was negligent you should consider the various factors appearing from the evidence, which in your judgment would influence the judgment or determination of a reasonably prudent person in deciding upon his course of conduct, such as the nature and character of the article manufactured and sold, the purposes for which it is intended that it shall be used by persons purchasing the same, and the statements of the label as to the purposes for which the article

may be used, and the manner for its recommended use. You may also consider the general custom and usage of the trade or industry making and selling products similar to that involved here. If you find that a custom or usage is generally followed in the trade or industry, that is not itself conclusive evidence but it is evidence which you should consider in determining the ultimate question, which you must decide—that is, whether the acts or omissions of the defendant in this case amounted to negligence. The defendant is, of course, legally liable for the negligence of the various agents or employees of the company occurring in the course of their employment."

We feel that the instruction given is broad enough to encompass plaintiffs' proposed instructions and that the charge, as a whole, submitted the issues fully and fairly. 14 Dunnell, Dig. (3 ed.) § 7165, and cases cited.

Affirmed.

FRANK T. GALLAGHER, JUSTICE (dissenting).

I cannot agree with the result in this case as it is my opinion that the evidence compels a finding that Mrs. Randall's condition was the result of a chemical burn caused by the use of defendant's product and that defendant was negligent as a matter of law.