JOSEPH N. NOLL, Secretary Department of Industry, Labor Human Relations
You have requested my opinion with regard to the potential liability of governmental bodies who hire building inspectors or contract with independent building inspectors or inspecting corporations to enforce the One- and Two-Family Dwelling Code, subch. 11, ch. 101, Stats. You have further asked what effect new legislation, namely ch. 221, sec. 2025, Laws of 1979, will have on small municipalities who choose not to provide inspections.
You first inquire into the potential liability to the state, county, or municipality for the torts of inspectors who enforce the code.
The state would not be liable for the tortious acts of certified inspectors working for a county or municipality for two reasons. First, since the state would not be the employing entity, it would not be the principal. The county or municipality would be the principal as the controlling body. Second, the state is protected from liability by the doctrine of sovereign immunity. Lister v. Board of Regents, 72 Wis.2d 282, 291,240 N.W.2d 610 (1976).
The second question then becomes whether the municipality is liable for the torts of employed inspectors.
Cities, counties, and other local units of government, hereinafter referred to as municipalities, have no governmental immunity from torts. They are liable for the torts of their officers, agents, and employes under the doctrine of respondeatsuperior. Holytz v. Milwaukee, 17 Wis.2d 26, 40, 115 N.W.2d 618
(1962). There could be no municipal liability for failure to adopt the code inasmuch as it is discretionary with the municipality whether to exercise jurisdiction. See sec. 101.65
(1)(a), Stats., which provides that cities, villages, towns, and counties "[m]ay . . . [e]xercise jurisdiction . . . by passage of ordinances." Also see section Ind 20.06 (1) Wis. Adm. Code. If the *Page 198 
local unit of government chooses to adopt the code, it must adopt the code in its entirety, including the performance of inspections. "Municipalities intending to exercise jurisdiction shall adopt the . . . Code in its entirety." Id. Section Ind 20.10 (1)(intro.) provides: "Inspections shall be conducted by the department or the municipality administering and enforcing this code."
If the municipality adopts the code, liability for torts occurring during its enforcement will depend on whether the inspection duties are found to be discretionary or ministerial.Lister, 72 Wis.2d at 300.
The definition of ministerial duties was provided in Meyer v.Carman, 271 Wis. 329, 332, 73 N.W.2d 514 (1955), "`Official action . . . is ministerial when it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law . . . defines the time, mode, and occasion for its performance with such certainty that nothing remains for judgment or discretion."' The enforcement of a building code has been found to be ministerial since there is a duty to inspect that is not discretionary under the statute. Coffey v. Milwaukee,74 Wis.2d 526, 534-35, 247 N.W.2d 132 (1976).
I believe it would be correct to state that since Coffey finds building inspections a ministerial duty, and Holytz removes the immunity of municipalities, municipalities would be held liable under the doctrine of respondeat superior for the torts of their building inspectors.
Whether or not the municipality is liable under the doctrine ofrespondeat superior, the inspector, be s/he an employe or an independent contractor, is still liable for his or her own torts. If the inspector is an agent or employe of the municipality, however, the Legislature has imposed a limit of $25,000 under sec. 895.43, Stats. (1977), changed to sec. 893.80 by ch. 323, sec. 29, Laws of 1979, on the amount recoverable against the agent or employe and the municipality.
There is an exception to municipal liability in the case of torts by independent contractors. Municipalities are not liable under the doctrine of respondeat superior for the torts of independent contractors. See Snider v. Northern States Power Co.,81 Wis.2d 224, 232, 260 N.W.2d 260 (1977). The third question, then, is whether building inspectors are independent contractors. *Page 199 
The categorization of a building inspector as an independent contractor will rely on several factors, the primary factor being control. When a municipality exercises control over an independent contractor, the contractor is no longer independent but is an agent of the municipality. In Strohmaier v. WisconsinGas Electric Co., 214 Wis. 564, 570, 253 N.W. 798 (1934), the independent contractor was a general contractor laying water and sewer pipes and digging trenches for a village. The plaintiff was harmed when there was an explosion due to a gas leak. The court found the general contractor to be an independent contractor because the village did not have control over the conduct of the work. "The progress and management of the work remained at all times within the direct control of the contractor. The village might, under certain circumstances, direct the method by which joints should be made . . . but in such case the contractor retained control of the workmen and of the operations."
Included in the primary test of control of an independent contractor are several factors used in determining control. The degree of control is what sets an independent contractor apart from an agent. An independent contractor is free from the control of the employer with regard to the details of the work. BoehckConstruction Equipment Corp. v. Voigt, 17 Wis.2d 62, 68,115 N.W.2d 627 (1962). Some control may be exercised by the employer. such as the result of the labor, but not the details, means, or mode of accomplishment. Fidelity Casualty Co. v. IndustrialAcc. Commission, 191 Cal. 404, 216 P. 578, 580 (1923). The right of an owner to supervise and inspect work to determine whether the work is completed as agreed upon is not enough to pierce the armor of an independent contractor. Smith v. Milwaukee Builders' Traders' Exchange, 91 Wis. 360, 365, 64 N.W. 1041 (1895). Persons in business for themselves are generally found to be independent contractors unless the employer exercises significant control. Burns v. Michigan Paint Co., 152 Mich. 613, 116 N.W. 182
(1908).
Other noteworthy factors evidencing an independent contractor status are method of payment (a specific sum paid for the work performed), Hayes v. Board of Trustees of Elon College, 224 N.C. 11,29 S.E.2d 137, 141 (1944); contractor's right to delegate responsibility or hire others to perform work, Farmer v. St.Croix Power Co., 117 Wis. 76, 84, 93 N.W. 830 (1903); and whether the independent contractor is obliged by contract to be responsible for any loss or *Page 200 
damage, Chicago, R.I. P.R. Co. v. Bond, 240 U.S. 449, 451
(1916).
Factors tending to disprove an independent contractor status include regularity of employment, Kablitz v. Hoeft,25 Wis.2d 518, 521, 131 N.W.2d 346 (1964); the employer's right to terminate a contract or discharge the contractor, SingerManufacturing Co. v. Rahn, 132 U.S. 518, 623 (1889); provision of medical benefits, Corrigan, Lee Halpin v. Heubler,167 S.W. 159, 161 (Tex.Civ.App. 1914); employer carrying liability or indemnity insurance on the contractor, Sempier v. Goemann,165 Wis. 103, 107, 161 N.W. 354 (1917); and employer withholding federal income tax and social security and paying state unemployment tax on the contractor, Smith v. West Lake Quarry Material Co., 231 Ark. 294, 329 S.W.2d 167, 169 (1959).
If the building inspectors are neither independent contractors nor employes of the municipalities, the law will treat them as agents whose torts are imputable to the municipality under the doctrine of respondeat superior. See Hollingsworth v. AmericanFinance Corp., 86 Wis.2d 172, 181, 271 N.W.2d 872 (1978).
The result of the lengthy discussion above is that for each municipality a determination of whether the contracted building inspectors are independent contractors or agents will depend solely upon the facts in each individual situation. There is no foolproof method to determine whether the inspectors are or are not independent. Any municipality desiring to contract with an inspector will have to weigh all of the above factors in establishing the business relationship based upon whether the municipality favors an independent contractor or an agent. Even then there can be no guarantee that a court would not disagree with the municipality's determination.
Turning to the fourth question, you ask whether a group of inspectors can limit their liability by incorporating. In my opinion, the answer is no. The corporation's liability may be limited to the extent of its assets, but the inspectors still would be individually liable for their own torts. See Oxmans'Erwin Meat Co. v. Blacketer, 86 Wis.2d 683, 693, 273 N.W.2d 285
(1979).
Your fifth and final question is whether under the new law, ch. 221, sec. 2025, Laws of 1979, municipalities of under 2,500 could be held liable for any harm due to the lack of inspection or negligence of *Page 201 
its inspectors. The problem arises where a municipality adopts the Code, but then does not perform the inspections. The new law reads: "A county or the department of industry, labor and human relations may not provide or require inspection services under (the Code) . . . in a village or town with a population of 2,500 or less unless the municipality consents." Ch. 221, sec. 2025 (12), Laws of 1979.
The new law, therefore, eliminates the requirement for inspections even where the code has been adopted. The statute supercedes the administrative code. Since no inspection is required by law, the municipality can not be held liable for not performing inspections even if it chooses to adopt the code.
BCL:CDH