**EOP–NICOLLET MALL,
L.L.C., Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

**No. A06–96.**

Supreme Court of Minnesota.

Nov. 2, 2006.

Thomas R. Wilhelmy, Judy S. Engel, Edward T. Matthews, Fredrikson & Byron, P.A., Minneapolis, MN, for Relator.

Robert T. Rudy, Lisa Hahn–Cordes, Hennepin County Attorney's Office, Minneapolis, MN, for Respondent.

Myron Lee Frans, Faegre & Benson LLP, Minneapolis, MN, for Amicus.

## OPINION

GILDEA, Justice.

After a 12–day trial, the tax court determined the value for property tax purposes of relator's property in downtown Minneapolis. Relator appeals to this court, claiming that the tax court made numerous errors that require remand for a new trial. We affirm.

Relator EOP–Nicollet Mall, L.L.C. (EOP) contested the January 2, 2000, and January 2, 2001, assessed values of EOP's office building (subject property) located at 800 Nicollet Mall in Minneapolis. The subject property, also known as the U.S. Bancorp Center, is a multi-tenant 30–story office building located diagonally across the street from the IDS Center in downtown Minneapolis. Construction on the subject property began in 1999 and was approximately 78% complete as of January 2, 2000, and 90% complete as of January 2, 2001.

During discovery, EOP sought to compel the production of any information in respondent County of Hennepin's files relating to at least 20 different third-party properties located in downtown Minneapolis.[1] The county objected to EOP's

---

1. The requested information included, without limitation, "any information related to leasing activity, income, vacancy, expenses, management fees, tenant improvements, leasing commissions, and cap or yield rates of any office building in" downtown Minneapolis, "the detailed terms of any such lease agreement, including the provisions relating to base rent, escalating rent, percentage rent, free rent, tenant requirements, leasing commissions, other costs or expenses paid by the lessor; common area expenses, and * * * any

discovery requests on the basis that the third-party information was protected from disclosure by the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. ch. 13 (2004). Many of the third-party owners petitioned to intervene to protect the confidentiality of their information, and the tax court granted the third-party petitions.

The third-party intervenors described the information that EOP requested about their properties as "extremely sensitive" and "the core information of their business." The intervenors stated that they had reached agreements with the county to protect the confidentiality of the information and asserted that all of the intervenors had provided "this sensitive data * * * with the assurance that the information will not be available to competitors, unless used by the assessor at trial, as permitted by law." The intervenors also argued that the assessment process would become more cumbersome, less uniform, and require much more court involvement if their nonpublic information was disclosed to EOP.

In describing the harm to their businesses from the disclosure of the requested information, the intervenors asserted "that despite the best efforts of all parties, the data would eventually become public." This public disclosure would lead to competitors having "an unfair advantage" in attracting customers from the intervenors. Additionally, the lessor intervenors assert-

ed that the disclosure would violate confidentiality agreements that the intervenors had with their lessees, even if the disclosure was limited to EOP's counsel and appraiser.

After two hearings, the tax court denied EOP's motion to compel. The tax court determined that the information sought by EOP was private or nonpublic data under section 13.51 of the MGDPA, Minn.Stat. § 13.51 (2004). The tax court applied the balancing test set forth in Minn.Stat. § 13.03, subd. 6 (2004), and determined that under the first prong of the test, the requested information was not privileged and was discoverable because it was relevant. The tax court then determined that under the second prong of the test, the harm to the third parties and the county from disclosing the data outweighed the benefit to EOP in receiving the data, even if the data was subject to a protective order.

EOP later amended and restated its motion to compel, and the tax court again heard arguments. EOP argued that some of the third-party information requested for years prior to 2001 was no longer private or nonpublic information under the MGDPA and therefore was no longer subject to the balancing test.[2] The tax court determined that the information was nonpublic because it was classified as trade secret data under Minn.Stat. § 13.37, subd. 2 (2004).[3] The tax court then refer-

---

documents relating to any part of [EOP's] Interrogatory." Additionally, EOP requested that the county produce "all income or expense statements, or other financial operating statements" for any of the third-party properties that the county had in its files. EOP also sought to discover "[a]ny hypothetical or demonstration appraisal or estimate of value of any Class A or Class B office building [in downtown Minneapolis that stated] a conclusion of value on or after January 1, 1989."

**2.** Under Minn.Stat. § 13.51, subd. 2 (2002), some data concerning income properties were classified "as private or nonpublic data" if the data were from the current or previous three years. The legislature subsequently removed the temporal restrictions from the statute. Act of May 29, 2004, ch. 290, § 12, 2004 Minn. Laws 1470, 1479.

**3.** EOP did not appeal this ruling.

enced the balancing test of section 13.03, subd. 6, which it had previously applied in denying the first motion to compel, and on the basis of this balancing, denied EOP's second motion to compel.

EOP next filed a motion seeking to prevent the county's expert appraiser from using, either in her appraisal report or at trial, any of the information that the tax court did not allow EOP to discover. The tax court denied EOP's motion but ordered that any information relied on by the county's expert in her appraisal or at trial be disclosed to EOP's counsel and appraiser under a strict protective order. In concluding that the information on which the county's expert relied should be disclosed, the tax court once again applied the balancing test of section 13.03, subd. 6. The tax court determined that because the county's expert was relying on some of the information in formulating her opinion, the benefit to EOP to have that information for the purpose of cross-examining the county's expert outweighed the harm to third parties and the county from the disclosure of the data.[4]

Trial commenced on July 20, 2004, and concluded on August 6, 2004. At the time of assessment, the county placed an estimated market value of $114,800,000 on the subject property for January 2, 2000, and $132,600,000 for January 2, 2001. EOP's expert appraiser, R.S., opined that the market value of the subject property was $86,300,000 as of the 2000 valuation date

and $105,600,000 as of the 2001 valuation date. The county's expert appraiser, V.T., opined that the market value of the subject property was $113,300,000 as of the 2000 valuation date and $119,200,000 as of the 2001 valuation date.

 The tax court and the expert appraisers considered the sales, income, and cost approaches to valuation.[5] The tax court ultimately concluded that the cost approach was "more reliable than the others" and valued the subject property on both dates solely based on the cost approach. After calculating a "value range of $114,000,000 to $117,000,000," the tax court determined that the subject property's value as of January 2, 2000, was $114,000,000. After calculating a "value range of $127,000,000 to $129,000,000," the tax court determined that the subject property's value as of January 2, 2001, was $127,000,000.

## I.

We first determine whether the tax court abused its discretion either in denying EOP's discovery motions, or in denying EOP's motion to prohibit the county from using information at trial which the tax court earlier had determined the county did not have to produce under the MGDPA.

 A trial court has "considerable discretion" in ruling on discovery related motions, such as those at issue here.

---

4. The tax court reciprocally ordered EOP to turn over to the county all information EOP's expert relied on in formulating his opinion.

5. "The comparable sales method attempts to value a property by comparing the recent arm's length sales prices of similar properties and then adjusting those sales prices for differences between the sold property and the subject property." *Kmart Corp. v. County of Becker*, 709 N.W.2d 238, 240 (Minn.2006). "The income method values a property by

capitalizing the net annual income the property would be expected to generate." *Id.* at 241. "[T]he cost approach to valuation 'is an attempt to determine the market costs of the property by analyzing the market costs to construct a similar property.'" *Theobald v. County of Lake*, 712 N.W.2d 180, 182 n. 1 (Minn.2006) (quoting *Theobald v. County of Lake*, No. CX–04–181, 2005 WL 937424, at *4 (Minn. T.C. Apr. 1, 2005)).

*Montgomery Ward & Co. v. County of Hennepin* (*Ward*), 450 N.W.2d 299, 305 (Minn.1990). We review such rulings under an abuse of discretion standard, and "a matter will not be disturbed on appeal unless the trial court abused its discretion, exercised its discretion in an arbitrary or capricious manner, or based its ruling on an erroneous view of the law." *Id.* at 305–06.

### EOP's motions to compel production of private/nonpublic data

There is no dispute that the data at issue in EOP's motions were properly characterized as private or nonpublic under the MGDPA, and that the county properly objected to producing the data on that basis. Under these circumstances, Minn.Stat. § 13.03, subd. 6 (2004), provides for the trial court, in response to a motion to compel production of the data, to apply a two-part test to determine whether to compel disclosure of the data. Under the statute,

■ The presiding officer shall first decide whether the data are discoverable or releasable pursuant to the rules of evidence and of criminal, civil, or administrative procedure appropriate to the action.

■ If the data are discoverable the presiding officer shall decide whether the benefit to the party seeking access to the data outweighs any harm to the confidentiality interests of the agency maintaining the data, or of any person who has provided the data or who is the subject of the data, or to the privacy interest of an individual identified in the data.

*Id.* The tax court applied this two-part test in the two orders it issued in response to EOP's motions to compel. In its orders, the tax court ruled that the harm to the county and third parties from disclosure of the data outweighed the benefit to EOP of receiving this data.

EOP argues that the tax court's denial of the motions to compel conflicts with the law set forth by this court in *Ward*. According to EOP, *Ward* stands for the proposition that "a taxpayer's constitutional right to due process requires access to the relevant valuation data in the government assessor's files under an appropriate confidentiality order." Because the tax court did not order the county to turn over all of the information EOP requested under the confines of a protective order, EOP argues the tax court erred under *Ward*. EOP misreads *Ward*.

In *Ward*, we determined that the county's appraiser relied on information from a prior tax court case (*Eden Prairie Donaldson's*)[6] which the county had not produced either in initial discovery or in compliance with the tax court's order "to exchange all the information [either party] intended to introduce into evidence." *Ward*, 450 N.W.2d at 304–05. We concluded that the tax court abused its discretion when it denied Montgomery Ward's motion to compel discovery without conducting the "mandatory" balancing analysis under the MGDPA. *Ward*, 450 N.W.2d at 308. We then conducted the two-part balancing test. We focused first on whether "the evidence introduced in *Eden Prairie Donaldson's* was relevant," and concluded that it was "highly relevant." *Ward*, 450 N.W.2d at 306–07. We then weighed the benefit to Montgomery Ward against the harm to others from providing the information. *Id.* at 307–08. In weighing the

---

**6.** *See Allied Central Stores (Eden Prairie) v. Hennepin County,* Nos. TC–4720 & TC–5542, 1988 WL 21105 (Minn. T.C. Feb. 11, 1988).

benefit to Montgomery Ward of disclosure, we were particularly concerned with the unfairness of allowing the county to use information at trial to which Montgomery Ward had no access, thus allowing the county to present a "one-sided version" of its appraisal approach immune to effective cross-examination. *Id.* at 307. In weighing the harm to others of disclosure, we determined that the harm to Donaldson's was minimized because Donaldson's counsel "recognized that taxpayers who litigate their property tax assessments take a risk that sensitive data may become public." *Id.* at 307. We concluded that the benefit to Montgomery Ward outweighed the harm to the county and Donaldson's. Accordingly, we ordered that the data must be disclosed under the MGDPA. *Ward,* 450 N.W.2d at 308.

*Ward* cannot be read to mean that relevant nonpublic data must always be produced as long as there is a protective order. Such a reading eviscerates the weighing of interests that the statute clearly requires and places the entire protection of nonpublic data into the vehicle of a protective order. If all that was necessary under the MGDPA for relevant nonpublic data to be disclosed in litigation was a protective order, the legislature would not have provided for the balancing test; it would simply have provided for the disclosure of the data under a protective order. The legislature did not make this choice.

The legislature instead provided that the trial court must first conduct a balancing test, and if the results of the balancing test dictate, the trial court "may" turn to a protective order. *See* Minn.Stat. § 13.03, subd. 6 ("The presiding officer may fashion and issue any protective orders necessary to assure proper handling of the data by the parties."). It is not for this court to rewrite the statute.

■ Our analysis in *Ward* and the language of the MGDPA confirms that the tax court did not err in denying EOP's motions to compel discovery. As we made clear in *Ward,* the balancing of interests in the statute is "mandatory." 450 N.W.2d at 306. The tax court in the instant case conducted this balancing and weighed the competing interests in two strongly reasoned analyses.

On the benefit side of the balance, the tax court determined that EOP sought to have "unfettered access" to *all* of the nonpublic information in the county's files relating to downtown Minneapolis Class A office buildings.[7] In assessing the benefit to EOP of receiving all of this information, the tax court noted that EOP made a broad discovery request even though EOP's own expert appraiser testified that he would be able to come to a conclusion of value on the subject property without such broad information.[8] EOP's appraiser also

---

7. Although EOP disputes this characterization of its discovery request by arguing that its request was "narrowly tailored to relevant valuation data" for its competitor's office buildings, our review of EOP's request confirms that the tax court's characterization of EOP's request is accurate.

8. The dissent reads the testimony of EOP's expert "differently" from the tax court and thus concludes that the tax court's conclusion that EOP's expert could prepare an appraisal without the data "was not well supported." The dissent's different read of the testimony

seems to presume that our standard of review on this factual question is de novo. It is not. We review the tax court's factual determinations, such as whether EOP's expert needed the information, under the clearly erroneous standard. *See, e.g., 200 Levee Drive Ass'n, Ltd. v. County of Scott,* 532 N.W.2d 574, 576 (Minn.1995). Moreover, there is a large gulf between whether information is useful and whether it is essential. We note that EOP's appraiser clearly indicated that he could perform an appraisal that met all applicable professional standards without the broad information requested by EOP. We also note that

testified that receiving such information "would be unusual" and he could not recall ever receiving such detailed information on downtown Minneapolis properties from the county.

With regard to the harm to the county and third parties from the disclosure of all of this information, both the intervenors and the county made several claims of harm for the tax court to consider. For example, the county argued that the assessment process would be hampered if property owners believed the county would reveal their sensitive business information to others. The intervenors argued that the data would become public and place them at a competitive disadvantage in leasing their properties, and that disclosure would violate confidentiality agreements that the intervenors had with their customers. EOP has not shown that the tax court erred in relying on any of these concerns. Based on this record, it was neither arbitrary nor capricious for the tax court to conclude that third parties would be harmed by release of the information to EOP's counsel, even if the information released was subject to a strict protective order. Additionally, it was not arbitrary or capricious for the tax court to conclude that the county's tax assessment capabilities would be compromised by the disclosure, or that taxpayers would be more likely to litigate their tax assessments in order to discover this sensitive information. Given that the benefit to EOP of receiving the broad information at issue was minimized by the fact that EOP's appraiser was able to come to a conclusion of value on the subject property without the requested material, it was not arbitrary or capricious for the tax court to conclude that the harm of disclosure outweighed the benefit to EOP. *See Northern Inns Ltd. v. County of Beltrami*, 524 N.W.2d 721, 722–23 (Minn.1994) (affirming "tax court's exercise of its considerable discretion in discovery matters" when it denied discovery motion after examining "the request in accordance with the two-part analysis mandated by Minn.Stat. § 13.03, subd. 6"). We therefore hold that the tax court did not abuse its discretion in denying EOP's motions to compel discovery.

### *EOP's motion to prohibit county's use of private/nonpublic data*

■ EOP subsequently filed a motion to prevent the county from using, either in its expert appraisal report or at trial, third-party information that the tax court did not allow to be discovered when it denied EOP's previous motions. The tax court denied EOP's motion but ordered that any information relied on by the county's expert in its appraisal or at trial be released to EOP's counsel and appraiser prior to trial and under a strict protective order. The tax court applied the MGDPA two-part balancing test and noted that the information at issue was "more limited" than EOP's initial discovery requests. The tax court ruled that the benefit to EOP of receiving the more limited information outweighed any harm to the county and the third parties from the disclosure.

EOP contends that the tax court erred in denying its motion for three reasons. First, EOP argues that allowing the county to withhold information from discovery and then use it at trial is inconsistent with our case law. Second, EOP argues that

---

EOP conceded, before the tax court, that its expert "could prepare the appraisal without the information sought in discovery." This was so because, as EOP explained to the tax court, "while [R.S.] did not have all of the requested private or nonpublic data, he did have some of that data or similar information which he had received from other clients." Based on this record, the tax court's finding was not clearly erroneous.

the tax court's decision to deny its motion in limine was "irreconcilably inconsistent" with the court's earlier order on EOP's motion to compel. Third, EOP claims that the tax court's decision conflicts with "fundamental fairness." We examine each of these arguments in turn.

EOP argues that the tax court's decision is inconsistent with our precedent, including *Uselman v. Uselman,* 464 N.W.2d 130 (Minn.1990). EOP is correct to note that in *Uselman* and other cases, we have recognized that trial courts have discretion to preclude admission of evidence that should have been disclosed in discovery, but was not. *See, e.g., id.* at 138. Those cases, however, are not applicable here. The county did not, as EOP argues, "withhold" or "conceal" the third-party information in this case. Rather, the tax court ruled that the data did not have to be produced to EOP after the tax court conducted the balancing test set forth in Minn.Stat. § 13.03, subd. 6. The cases EOP cites that authorize the exclusion of evidence when that evidence was found to have been wrongly withheld from discovery are therefore inapposite to the issue at hand.

EOP also claims that the tax court's decision conflicts with *Ward.* But this argument is based on the same faulty reading of *Ward* that we previously rejected.

Finally, EOP argues that the tax court's decision conflicts with this court's opinion in *Northwestern National Life Insurance Co. v. County of Hennepin (NWNL),* 572 N.W.2d 51, 55 (Minn.1997). EOP argues that *NWNL* stands for the proposition "that in a property tax appeal it is error to permit the government to use information at trial which has been sought but not produced through discovery." Based on its reading of *NWNL,* EOP argues that the only issue for this court to decide "is whether EOP was materially prejudiced by the tax court's error."[9] We disagree.

In *NWNL,* the county and NWNL reached an agreement as to the scope of documents the county would produce in response to NWNL's request for information on 20 specific building sales. *NWNL,* 572 N.W.2d at 54. "However, in providing the [agreed upon] documents, the County redacted what it considered to be nonpublic information * * * without informing

**9.** EOP is correct that we would need to conduct a "material prejudice" analysis if the tax court had made an error. *NWNL,* 572 N.W.2d at 55. Because we conclude *infra* that the tax court did not err, the material prejudice analysis is not necessary. In the alternative, our review of the record does not support a finding of material prejudice. We note that EOP's cross-examination of the county's expert extended over 4 trial days and accounted for almost 500 pages of the trial transcript. While EOP contends that "in several instances," it was "denied or limited in its access on cross-examination to information relied upon by the County's expert," EOP cites only two examples. Our review of these examples confirms that EOP was not materially prejudiced in how the tax court handled these two issues.

Separately, EOP claims that it was prejudiced because it did not have access to all of the information in the county's expert's files,

and that therefore EOP's expert, R.S., was limited in his ability to conduct a capitalization rate analysis. EOP argues that the tax court accepted the county's expert's "calculation of economic obsolescence using that same capitalization rate," in part, because the tax court determined "that [the county's expert's] analysis was more reliable than [R.S.'s] analysis." But EOP offered a capitalization rate study prepared by P.K., and R.S. testified that he relied on this capitalization rate study in conducting his analysis. EOP also argues that capitalization rate was relevant in the cost approach on the issue of economic obsolescence. In this regard, we note that EOP called another expert, D.J., to rebut the county's expert's opinion on economic obsolescence, and that the tax court incorporated D.J.'s opinion in its final determination of a range for economic obsolescence. Accordingly, the record does not support a finding of material prejudice.

[NWNL] that the information had been redacted and without claiming any privilege for doing so." *Id.* NWNL claimed that it did not learn that the information had been redacted until shortly before trial, and when the tax court denied NWNL's motion to prevent the county's expert from using the redacted information in his testimony, NWNL appealed to this court. *Id.* at 54–55. With no other analysis, we stated: "Based on the facts before us, we conclude that the tax court erred when it permitted the County to use, at trial, information which [NWNL] had requested through discovery, but which the County did not provide until the day of trial." *Id.* at 55.[10] We held, however, that the taxpayer "was not materially prejudiced by the tax court's error." *Id.*

Our decision in *NWNL* is inapposite to the question raised here. Our conclusion in *NWNL* was specifically limited to "the facts before us," and those facts did not involve a weighing of interests under the MGDPA.[11] 572 N.W.2d at 55. Moreover, in this case, unlike in *NWNL*, the county provided the third-party information its expert used to EOP before trial.[12]

In sum, the tax court's decision is not inconsistent with our precedent. The tax court was faced with competing interests when it examined EOP's motion in limine, the rights of the parties involved in the litigation as well as the privacy interests of the third parties whose information was at issue. The tax court chose to resolve these competing interests using the balancing test in the MGDPA and it ordered that any data relied on by the county's expert or used at trial be turned over to EOP before trial within the confines of a protective order. The language of the MGDPA could be more specific in addressing the dual role the county could be viewed as having here, both as custodian of nonpublic data and as a party in litigation. But given the "considerable discretion" the tax court had in resolving EOP's pretrial motion, we find that the tax court's determination to analyze the issue within the rubric of the balancing test of the MGDPA was not erroneous. *Northern Inns Ltd.*, 524 N.W.2d at 723.

The dissent seems to agree that the tax court properly turned to the MGDPA balancing test to resolve EOP's motion in limine, but the dissent contends that the tax court balanced the wrong interests. Specifically, the dissent argues that the tax court erred because "it did not apply the balancing test to the county's request to use the nonpublic information at trial." This argument is premised on the dissent's faulty assumption that EOP's motion in limine should be viewed as an objection by EOP "*under the MGDPA* to the public use by the county of any of that information." (Emphasis added.) This assumption is

---

**10.** Apparently the information at issue was the information that had been redacted.

**11.** In a pretrial hearing, an intervenor in *NWNL* argued that the use of its information would be a violation of the MGDPA. 572 N.W.2d at 54 n. 5. To resolve the issue, the parties agreed "that all of the unredacted documents would be provided, but would not be removed from the courtroom." *Id.*

**12.** While EOP appears to be arguing that its due process rights were violated because the county's appraiser relied on information that EOP was not given, our review of the record convinces us that this was not the case. To the extent EOP provides citation to the record to support its contention that information was not provided, the cited references do not support EOP's contention that information was relied on but withheld. To the extent EOP is relying on other instances for which it did not provide record citation, these arguments are deemed waived. *See In re Irwin*, 529 N.W.2d 366, 373 (Minn.App.1995), *rev. denied* (Minn. May 16, 1995) (finding argument waived where appellant failed to specifically identify evidence to which he objected in brief).

faulty because, under the plain language of the statute, the balancing test applies only when a government entity "opposes discovery of government data or release of data pursuant to court order." Minn.Stat. § 13.03, subd. 6. *Cf. Demers v. City of Minneapolis,* 468 N.W.2d 71, 74 (Minn. 1991) (applying a narrow interpretation of subdivision 6).

In addition, the MGDPA addresses *public* access to *government* data. The MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data." Minn.Stat. § 13.01, subd. 3 (2004). The "access" issue relates to *public* access: the act "establishes a presumption that government data are public and are accessible by the public." *Id.* The language of the balancing test is similarly limited to *public* access to data. The balancing test requires that "the presiding officer shall decide whether the benefit to the *party seeking access to the data* outweighs any harm to the confidentiality interests of the agency maintaining the data or" any privacy interests of third parties. Minn.Stat. § 13.06, subd. 6 (emphasis added). The county was not "seeking access to the data;" the county already had access to the data.[13] In short, nothing in the plain language of the statute or our case law supports the dissent's theory that the tax court should have applied the balancing test to determine whether the county's expert could rely on information that was rightly in her files.[14]

---

13. There are many ways the data at issue could have come into the county's files. *See, e.g.,* Minn.Stat. § 278.05, subd. 6 (2004) (noting that taxpayer challenging assessment must provide information about its property "to the county assessor"); Minn.Stat. § 273.061, subd. 8a (2004) ("Notwithstanding any provision of law to the contrary, in order to promote a uniform assessment and review of assessments, the commissioner of revenue, county assessors and local assessors may exchange data on property which are classified under chapter 13 as public, nonpublic or private."); Minn Stat. § 273.061, subd. 9(g) (2004) (listing as one duty of the county assessor "to investigate and make recommendations relative to all applications for the abatement of taxes or applications for the reduction of the net tax capacity of any property"); *see also* Minn. R. 1205.0400, subp. 2 (2005) (noting that private data may be made available to "individuals within the [government] entity whose work assignments reasonably require access").

14. In the alternative, the dissent suggests that if the balancing test was not applicable to the county's expert's use of the data, then the tax court likewise should not have used it to order the county to provide EOP with the data on which the county's expert relied. We disagree. Even though EOP had not filed a "formal motion" to compel release of the expert's information, the tax court reverted to the balancing test because the court understood EOP's "real complaint" to be that it had "not received information." Accordingly, once the tax court determined that it was not going to prohibit the county's expert from relying on information in her files, the tax court chose to "treat" EOP's motion in limine "as a request to compel the expert's underlying information." EOP had claimed that its right to due process would be violated if the county's expert was permitted to rely on information that had not been provided to EOP. It was not an abuse of discretion for the tax court to resolve this issue by resorting to the MGDPA balancing test, especially given that the MGDPA itself categorized the information at issue, the data on which the county's expert relied, as nonpublic. *See* Minn.Stat. § 13.51, subd. 2 (2004).

Although the dissent has made an issue out of the "public use" of the third parties' information at trial, the third parties have not claimed that the county improperly disclosed the third parties' nonpublic information at trial. We also note that the legislature has addressed—albeit in a very broad, general way—the use of nonpublic data at trial. *See* Minn.Stat. § 13.03, subd. 4(a) (2004) (providing that "[t]he classification of data in the possession of an agency shall change if it is required to do so to comply with either judicial or administrative rules pertaining to the conduct of legal actions"); *see also* Minn.Stat. § 13.4965, subd. 4 (2004) (providing that "[d]isclosure of assessor's real estate tax rec-

We next review whether, as EOP argues, the tax court's weighing of the different interests under the MGDPA in the context of EOP's motion in limine was done "in an arbitrary or capricious manner." *Ward*, 450 N.W.2d at 305–06. EOP argues that the tax court's decision to allow some information to be disclosed under the MGDPA was "irreconcilably inconsistent with the reasoning in its previous orders," and therefore arbitrary.

EOP's contention of inconsistency, which the dissent appears to adopt, ignores the fact that different data were at issue when the tax court considered this second motion. The tax court's careful balancing recognized this difference. The tax court found that the benefit to EOP of receiving the "more limited information" was greater than the benefit to EOP if it had been given all of the "broad" information EOP sought in discovery. Because the more limited information was needed "in order to prepare for cross examination" of the county's expert, the weight of the benefit

to EOP was now increased.[15] *See Ward*, 450 N.W.2d at 307. This more specific benefit to EOP—having the information the expert relied on in order to cross-examine the expert—was not present when the tax court weighed interests in analyzing EOP's motions to compel broad discovery of all third-party information in the county's files.

Coupled with an increased benefit to EOP, the tax court found that the weight of the harm to the county and third parties was reduced because significantly less non-public information was released to EOP. Additionally, some of the third-party intervenors had conceded that the county could use the information at trial,[16] and that it was the "well-settled practice in [the tax] court that appraisers are subject to cross-examination on materials they rely upon for opinions of valuation." Because the benefit to EOP of disclosure had increased, and the harm to the county and third parties from the disclosure had decreased, it was not inconsistent, and cer-

ords for litigation purposes is governed under section 278.05." Minnesota Statutes § 278.05, subd. 3 (2004), provides that "[a]ssessor's records * * * may be offered at the trial subject to the applicable rules of evidence"). Nonetheless, the interpretation of these statutes has not been briefed and is not properly before us in this case. *See Lipka v. Minn. Sch. Employees Ass'n, Local 1980*, 550 N.W.2d 618, 622 (Minn.1996) (stating that "judicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us").

Finally, it is not clear in this case that the third-party information ever became "public," as the dissent seems to assume. *See* Minn.Stat. § 13.02, subds. 14, 15 (2004) (explaining that "public data" means "data which is accessible to the public" under section 13.03). To the contrary, the tax court and parties took steps to ensure that the privacy interests of the third parties were protected and that their information was not broadly disseminated or made public. For example, the tax court released the data to

EOP under a strict protective order, which required that "[a]ll specific income, expense and lease information" be coded and referred to in code in all trial exhibits and testimony. The key to the code was restricted to the court, counsel, and testifying experts. The tax court also closed a portion of the trial to the public.

**15.** The tax court's conclusion that it was important for EOP to have this information for cross-examination purposes is supported by our conclusion in *Ward*. As noted *supra*, in *Ward* we were particularly concerned that the county's use of information at trial to which Montgomery Ward had no access allowed the county to present a "one-sided version" of its appraisal approach that would be immune from effective cross-examination. *Ward*, 450 N.W.2d at 307.

**16.** These concessions are relevant under the balancing test insofar as they reflect on the intervenors' concerns for privacy. *See* Minn. Stat. § 13.03, subd. 6.

tainly not arbitrary or capricious, for the tax court to come to a different conclusion about this narrower set of information when weighing interests under the MGDPA.

Finally, we consider EOP's argument that the tax court's decision to deny EOP's motion, but order each side to produce the data on which their experts relied, led to an "unfair" result. The tax court noted that both the Minnesota Rules of Civil Procedure and the Minnesota Rules of Evidence regulate the information parties are required to disclose regarding their experts. Minnesota Rule of Civil Procedure 26.02(d)(1)(A) requires disclosure of the identity of experts, the subject matter of their testimony, the "substance of the facts and opinions" about which experts will testify, and "a summary of the grounds for each opinion." Minnesota Rule of Evidence 705 permits an "expert [to] testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data." Even though the expert may testify without prior disclosure of the underlying facts or data, the rule also provides that the court "may" require the expert "to disclose the underlying facts or data on cross-examination." *Id.*

The tax court's decision to require that each side produce the information on which its experts relied in formulating their opinions, but not all of the information in the expert's files, comports with the Minnesota rules discussed above. The de-

cision also is in accord with how expert witness disclosures have been handled under the similar federal rules. *See, e.g., United States v. Hensel,* 699 F.2d 18, 38–39 (1st Cir.1983) (holding that "manuals, reports, rules and regulations" in government's files but that government's expert did not rely on did not need to be produced to the defense); *United States v. 10.48 Acres of Land,* 621 F.2d 338, 340 (9th Cir.1980) (rejecting as "meritless" defendant's argument that expert should have disclosed data that "had in no way [been] relied on [ ] in estimating the value of defendant's land."); *see also* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6294 (1997) ("[I]f the expert did not rely on certain material in formulating his opinion, there may be no right to pretrial discovery of that material and failure to produce it is not grounds for requiring prior disclosure.").[17]

We hold that the tax court did not abuse its discretion when it denied EOP's motion to prevent the county from using the previously undisclosed data, but ordered the county to disclose to EOP the data on which the county's expert relied.

## II.

■ EOP next argues that the tax court committed reversible error when it denied admission of EOP's proposed Exhibit 59. EOP also argues that the tax court committed reversible error when it admitted

---

**17.** After first acknowledging that "the protections of the MGDPA are not necessarily equivalent to those applicable to an evidentiary privilege," the dissent nonetheless includes a discussion analogizing the dissent's conception of a "principle in privilege law" to the MGDPA. We first note that it appears to be inconsistent to argue that two things that are not equivalent must be treated the same. Even if this apparent inconsistency was not present, the dissent's "principle in privilege law" is inapposite to the issue before us. We have been presented with the issue of whether the tax court abused its discretion in resolving an issue under the MGDPA. The MGDPA does not provide a privilege to government entities that those entities may choose to waive. The MGDPA places responsibilities on government entities, responsibilities those entities are not free to waive or ignore without risk of liability. *See* Minn.Stat. § 13.08, subd. 1 (2004).

20 of the county's exhibits. "A tax court's decision whether to admit or exclude evidence will not be disturbed absent legal error or an abuse of discretion." *Marquette Bank Nat'l Ass'n v. County of Hennepin*, 589 N.W.2d 301, 307 (Minn.1999). "Even if the tax court inappropriately excluded evidence, the evidentiary ruling must be shown to have materially prejudiced the appealing party." *Id.; see also* Minn. R. Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *.").

We first address the admissibility of EOP's proposed Exhibit 59. During cross-examination of the county's expert appraiser (V.T.), EOP's counsel showed V.T. a one-page document marked as Exhibit 59. Exhibit 59 showed a list of four comparable properties that V.T. had used in determining the value of the subject property under the sales approach. In addition to the sale prices of the four comparable properties and their sale dates, Exhibit 59 also showed the Hennepin County assessed value for property tax purposes of each of the four properties on January 2, 2000, and January 2, 2001.

▆▆▆▆ EOP argues that the tax court erred both in finding that Exhibit 59 was not relevant and in denying EOP's offer of proof about relevance. Regarding relevancy, we conclude that the tax court did not abuse its discretion. EOP's contention at trial was that the assessed value of these four properties was relevant to whether V.T. properly valued the four properties under the sales comparison approach.[18] When the county objected to Exhibit 59's admission on relevancy grounds, the tax court sustained the objection and ruled that the assessed value of the comparable properties was not relevant for purposes of the sales comparison approach. The tax court's ruling is in accord with the rule "that the assessed value of property for tax purposes, in and of itself, is generally not admissible as direct evidence of value for purposes other than taxation" of that property. *E.g., Lienemann v. City of Omaha*, 191 Neb. 442, 215 N.W.2d 893, 894 (1974) (adopting the rule and citing *Hetherington Letter Co. v. City of Cedar Rapids*, 207 N.W.2d 800 (Iowa 1973)); *see also* Annotation, *Valuation for Taxation Purposes as Admissible to Show Value for Other Purposes*, 39 A.L.R.2d 209, 214 (1955) ("It is the overwhelming weight of authority that assessed value is not competent direct evidence of value for purposes other than taxation."). Under this rule the assessed value of property for tax purposes is not relevant to the question of that same property's market value. Market value, however, was the issue EOP raised in Exhibit 59. The tax court did not err in finding that Exhibit 59 was not relevant.[19]

18. EOP makes a different relevancy argument to this court. EOP contends that Exhibit 59 was relevant to the capitalization rate and valuation trends. These arguments were not made at trial or in EOP's post-trial briefs. Accordingly, we consider these arguments waived. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating that "[a] reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it") (internal quotation marks omitted).

19. The tax court also appears to have been concerned about conducting a trial within a trial about the assessment process for the comparable properties. Given that neither the tax court nor EOP's appraiser ultimately gave any weight to the sales comparison approach, even if Exhibit 59 was relevant to that valuation approach, under Minnesota Rule of Evidence 403, the tax court did not abuse its discretion in denying admission on the grounds that a trial within a trial about the assessed values would have caused an "undue delay" and been a "waste of time."

Additionally, because, as the tax court noted, "the substance of [Exhibit 59] was clear from the face of the document," the tax court did not abuse its discretion in denying EOP's offer of proof. *See* Minn. R. Evid. 103 (noting that the "substance of the evidence" at issue must be "made known to the court"). Based on the facts of this case, we hold that the tax court did not err in connection with Exhibit 59.

■ EOP next argues that the tax court erred when it admitted 20 of the county's exhibits introduced during cross-examination of EOP's expert appraiser (R.S.). The essence of EOP's argument is that the exhibits lacked a proper foundation. Each of the 20 exhibits contains information from R.S.'s appraisal and was adjusted by the county for various points of disagreement with R.S.'s calculations. The tax court determined that the purpose of the exhibits was to document "the cross-examination questions testing the methodology, assumptions and calculations made by [R.S.] in rendering his opinion of value." The tax court ruled that "[t]here was sufficient foundation laid regarding the information, methodology and numbers used by [the county] in preparing the charts to allow the Exhibits into evidence." The tax court further ruled that the exhibits "were either based on information in the record or were hypothetical questions."

■ It has long been our rule "that a fact germane to an inquiry, whether the subject of testimony or otherwise, may in the sound discretion of the trial court be used for testing an expert in cross-examination." *Randall v. Goodrich–Gamble Co.*, 244 Minn. 401, 406, 70 N.W.2d 261, 265 (1955). Additionally, "counsel may even be permitted on cross-examination, for the purpose of testing the skill and accuracy of the expert witnesses, to ask hypothetical questions pertinent to the inquiry, assuming facts having no foundation in the evidence." *Id.* (internal quotation marks omitted).

Given our long-standing precedent, there is no merit to EOP's argument. Each of the challenged exhibits was prepared based on the information provided by EOP's expert and related to facts germane to the inquiry before the tax court. Due to the numerous variables incorporated into an appraisal, it would be very difficult for a fact finder to understand the impact of a change of one contested variable relied on by the expert without the aid of such exhibits. As the tax court noted, such exhibits "are customarily used in property tax valuation cases to test appraisal experts," and similar exhibits were introduced into evidence by EOP to test the county's expert. The tax court made it clear, as the fact finder in this case, that admission of the exhibits was not a ruling on the "merit" and "weight" that the tax court would give to the exhibits in fact finding. We hold that the tax court did not abuse its discretion in admitting the challenged exhibits.

### III.

■ Finally, we consider the tax court's valuation of the subject property. We "will not disturb the tax court's valuation of property for tax purposes unless the tax court's decision is clearly erroneous, which means the decision is not reasonably supported by the evidence as a whole." *Equitable Life Assurance Soc'y of the U.S. v. County of Ramsey*, 530 N.W.2d 544, 552 (Minn.1995).

EOP makes a number of claims of clear error by the tax court in arriving at a valuation of the subject property. EOP contends that "[t]he tax court's determinations regarding the experts' comparative credibility were contradicted by the evidence." EOP next claims that the tax court clearly erred when it "failed to rec-

ognize the interrelated nature of the components of the appraisal process." EOP also claims that the tax court clearly erred in its estimate of external obsolescence.[20] Finally, EOP claims that the tax court clearly erred when it applied its estimate of external obsolescence on a percentage of completion basis to the value of the building under the cost approach of valuation.

▮▮▮ Because of "the inexact nature of property assessment," we "defer[ ] to the decision of the tax court unless it has clearly misvalued the property or completely failed to explain its reasoning." *NWNL*, 572 N.W.2d at 52. The tax court here established a range of value for the subject property and ultimately selected the low end of the range as the value. The tax court issued a written opinion providing ample support and reasoning for its decision. We have reviewed the record and thoroughly considered all of EOP's claims. We conclude that the tax court's valuation of the subject property is reasonably supported by the evidence as a whole. We therefore hold that the tax court's valuation of the subject property is not clearly erroneous.

Affirmed.

HANSON, Justice, (concurring in part, dissenting in part).

I respectfully concur in part and dissent in part. I agree with the majority that the tax court did not abuse its discretion in denying EOP's motion to compel production of nonpublic information provided to the county by other property owners (collectively referred to as "Other Taxpayers"). But I conclude that the tax court did abuse its discretion when it denied EOP's motion in limine to preclude the county from using the same nonpublic information against EOP at trial. The tax court erred when it applied one legal standard to deny EOP's request for the nonpublic information but a different, more relaxed, legal standard to grant the county's request to disseminate the same nonpublic information by using it as evidence in the trial on EOP's tax assessment. I further conclude that the tax court did not cure this error by later requiring the county to produce only those portions of the nonpublic information of Other Taxpayers that the county selected for use at trial because this denied EOP the opportunity to test, by discovery or cross-examination, whether other nonpublic information, available to but not selected for use by the county, was detrimental to the county's appraisal, thus essentially allowing the county to become the gatekeeper of the release of the nonpublic information.

To properly analyze the tax court's rulings, it is important to clarify that the county played two separate roles. On the one hand, the county was the custodian of nonpublic information provided by numerous taxpayers regarding their individual properties. As we noted in *Montgomery Ward v. County of Hennepin*, "other taxpayers provide information about their sales and/or rent to the county with the tacit understanding that this information is not going to be disclosed to competitors." 450 N.W.2d 299, 306 (Minn.1990). And, as noted by the tax court here, the affidavits of several of the Other Taxpayers "stated that they provided the specific information to Hennepin County with the explicit understanding that the information would not be made public." Thus, the county, as

---

**20.** The tax court defined "external obsolescence" as "an incurable loss in value caused by negative influences outside the property itself, such as general economic conditions, availability of financing, or inharmonious property uses." (Citing Appraisal Institute, *The Appraisal of Real Estate* 363–64, 412–14 (12th ed.2001)).

custodian, had the responsibility to protect the privacy of Other Taxpayers' information, consistent with the Minnesota Government Data Practices Act (MGDPA). *See* Minn.Stat. § 13.51, subd. 2 (2004) (classifying certain vacancy, lease, income, expense and usable/rentable area data held by county assessors as "nonpublic data"). The county exercised that responsibility when it refused to produce Other Taxpayers' information to EOP and opposed EOP's motion to compel. On the other hand, the county was also a party defending against EOP's property tax challenge. In that role, the county had a significant advantage over EOP because the county had access to the nonpublic information of all Other Taxpayers whose properties were arguably comparable to EOP's.

The combination of these two roles placed the county in a conflict of interest. As custodian, the county's responsibility was to keep the nonpublic information of Other Taxpayers private, but as a party, the county's interest was to disseminate the nonpublic information of Other Taxpayers in the EOP trial to support the county's valuation of EOP's property. In my view, the MGDPA protects against that conflict of interest by reinforcing the county's role as custodian and regulating the county's role as a party. Because the county's use at trial would necessarily disseminate the nonpublic information to persons who do not have the privacy interest, that use is regulated by the MGDPA in the same manner as the use by any other party. My concern with the tax court's decision on EOP's motion in limine is that it did not apply the balancing test to the county's request to use the nonpublic information at trial.

My concern is not with the private, internal access to nonpublic information by the county, but with the public, external dissemination of such information by use of the information at trial. I agree that the Hennepin County Assessor had complete access to the nonpublic information provided by the Other Taxpayers, even though it was provided with a promise of confidentiality. And Minn.Stat. § 273.061, subd. 8a (2004), authorizes the Hennepin County Assessor to exchange that nonpublic information with other county or local assessors.[1] But, that statute only authorizes such exchanges for internal use because it also provides that data "exchanged under this provision that is classified as nonpublic or private data shall retain its classification." *Id.*

Thus, there is no issue about the internal access by assessors to the nonpublic data. The only issue is whether an assessor, who has full access to nonpublic information, may make the information public by using it in the trial of the tax assessment of another taxpayer. As to that issue, the more precise question is by what authority does a county assessor, who is charged with the responsibility of maintaining the privacy of nonpublic information, make it public by disseminating it in the course of a trial with parties other than the party who possesses the privacy interest.

On this question the majority suggests that my concerns are premised on a "faulty assumption that EOP's motion in limine should be viewed as an objection by EOP '*under the MGDPA* to the public use by the county of any of that information.'" (emphasis in the majority opinion). The majority argues that the balancing test

---

1. Minnesota Statutes § 273.061, subd. 8a, was apparently enacted in response to the tax court's decision in *Homart Development Co. v. County of Hennepin*, File No. TC–16946, 1994 WL 130010 (Minn. Tax Ct. Order, April 13,

1994), which held that an assessor in one jurisdiction could not exchange taxpayer information with an assessor from another jurisdiction.

only applies to objections by the government entity. But if that were true, then the county would never be permitted to use nonpublic information of other taxpayers at the trial of the subject taxpayer. The balancing test of Minn.Stat. § 13.03, subd. 6 (2004), would not be available to authorize the public use and dissemination of nonpublic information by a county assessor, and I can find no other provision, in the MGDPA or elsewhere, that authorizes such use and dissemination.

The majority apparently suggests that such authority is provided by Minn.Stat. § 13.4965, subd. 4 (2004), which authorizes the disclosure of an "assessor's real estate tax records for litigation purposes." But that section does not address nonpublic information that comes into the possession of an assessor from another taxpayer. The disclosure of an assessor's real estate tax records is governed by Minn.Stat. § 278.05, subd. 3 (2004), which clarifies that its provisions apply to the records generated by the assessor, including "certificates of real estate value, assessor's field cards and property appraisal cards." In fact, if section 278.05, subd. 3, applied to override the MGDPA with respect to nonpublic information held by assessors, this case would not be here because that section requires that the assessor's records "be made available to the petitioner for inspection and copying" and the tax court would have had no basis to limit EOP's request for the data by imposing a balancing test.

Thus, I conclude that, without access to the balancing test under the MGDPA, a county has no other mechanism to be judicially relieved of its responsibility to keep the nonpublic information private. I agree that the MGDPA does not expressly state that the balancing test applies to public use and dissemination by the government entity. The MGDPA does not define the word "party," as it is used in section 13.03,

subd. 6, to describe the person who is seeking access to nonpublic data, and subdivision 6 focuses more directly on issues of discovery. But I would interpret subdivision 6 to be applicable to the county's public use at trial of nonpublic data. It is difficult to imagine any reason why the legislature would intend to authorize public use of nonpublic information by private persons who can meet the balancing test of subdivision 6, but not by a county that could likewise meet that test. I conclude that the word "releasable" in subdivision 6 provides a broader context than "discoverable" and encompasses the publication of nonpublic data by use at trial. Further, I conclude that the word "party" in subdivision 6 includes the county when it is acting as a party to the proceeding in which the data might be used.

### A. Erroneous Application of the MGDPA.

EOP argues that its due process rights were violated when the tax court applied one legal standard to prevent EOP from accessing the nonpublic information of Other Taxpayers and a lesser legal standard to permit the county to use that information. As we noted in *Montgomery Ward*, "[i]n a property tax matter * * * relator's constitutional right to due process is at stake." 450 N.W.2d at 306. But, I conclude that it is not necessary to reach the due process issue because the tax court's ruling, allowing the county to use the nonpublic information, resulted from an erroneous application of the MGDPA. This constituted an abuse of discretion and warrants reversal of the tax court's decision.

### 1. The legal standard applied to EOP's motion to compel production of the information of Other Taxpayers.

When EOP moved to compel the county to produce the nonpublic information of Other Taxpayers, the tax court performed

the two-part balancing test required by section 13.03, subd. 6:

> The presiding officer shall first decide whether the data are discoverable or releasable pursuant to the rules of evidence and of criminal, civil, or administrative procedure appropriate to the action.

> If the data are discoverable the presiding officer shall decide whether the benefit to the party seeking access to the data outweighs any harm to the confidentiality interests of the agency maintaining the data, or of any person who has provided the data or who is the subject of the data, or to the privacy interest of an individual identified in the data.

### a. Was the information "discoverable or releasable"?

The tax court easily decided that the nonpublic information of Other Taxpayers was relevant to the income approach to the valuation of EOP's property and thus was discoverable. This was consistent with our observations in *Montgomery Ward,* that the value of a comparable property was relevant because the "assessor is obligated to consider similar property when making the assessment." 450 N.W.2d at 306.

### b. Did the benefit to EOP from using the information outweigh any harm to the county or Other Taxpayers?

The tax court weighed this question in favor of confidentiality. The court first minimized any benefit to EOP from use of the information based on the conclusion that EOP's expert could prepare an appraisal without it.[2]

The tax court then considered the burden on the county and the Other Taxpayers if the information were made public. It found that the burden outweighed any benefit, emphasizing several harms that would result from the information becoming public:

> Intervenors and Respondent argue that there is a great burden on the county and third party property owners. Intervenors argue that in the future they would not readily give this detailed information to the assessor because of the risk of it falling into the hands of a competitor. A county assessor would face greater difficulty in resolving tax disputes without this information. Further, litigation may increase as property owners/managers would contest taxes simply to undertake discovery. With the information, they could solicit tenants. Further, the property owners provided this information with the understanding that it would be kept confidential.

> * * * *

> * * * If this information were to be turned over to Petitioner, even with prohibitions and/or protections about the

---

2. In my view, this conclusion was not well supported because the actual testimony of EOP's expert was that the information would be very useful to his analysis. R.S. emphasized that he did not have access to the relevant lease information for the 15 buildings that he had identified as comparable for an income approach to value and that, for two of the buildings that had been sold, he did not have adequate information to perform a market-derived capitalization rate analysis, which requires information on the rents of the leases that are in place at the time of sale. When pressed by the tax court as to whether he could form an opinion without the information, he first said he could "take a guesstimate" of the capitalization rates and, when pressed further, he said "I think I could." He went on to explain that, without the information, he would have to remove the two recently sold buildings from his analysis. Ultimately, R.S. was unable to place any weight on his sales comparison analysis.

release of the information, it could cause taxpayers to be less cooperative. Leases themselves could be used as a basis for a solicitation and luring away of tenants. Further, there is a legitimate concern that if this information were to be released, in the future, building owners would contest taxes in order to obtain competitor's information. This would put an undue burden on the county's property tax collection system. Further, the information is proprietary.

Although section 13.03, subd. 6, authorizes the court to "fashion and issue any protective orders necessary to assure proper handling of the data by the parties," the tax court's order denying EOP's motion to compel recited the Intervenor's concerns but did not state the court's conclusions on a protective order. Implicitly, the court rejected a protective order when it denied the motion to compel, but it did not explain the rationale. Although I believe that a protective order would have been appropriate, I acknowledge that the denial of it was within the tax court's discretion.

2. *The legal standard applied to the county's request to use the information of Other Taxpayers.*

One would logically expect that the tax court's analysis of the request of the county to use the information of Other Taxpayers at EOP's trial would lead to the same conclusion under the balancing test: although the information was relevant, the county could not demonstrate that the benefit to the county would be any greater than to EOP and the harm would be the same—the Other Taxpayers would be discouraged from cooperating with the asses-

sor; property owners would be encouraged to challenge their property taxes simply to gain access to the information of their competitors; the Other Taxpayers' understanding that this information would remain confidential would be violated; property owners could use the information to lure tenants away from their competitors; and the county's property tax collection system would be burdened. Presumably, that harm could not be avoided by a protective order, for the same reasons that the court rejected a protective order for EOP.

But the tax court did not reach the same conclusion, essentially because it misinterpreted the thrust of EOP's motion in limine and restructured that motion to answer the wrong question, with the result that it applied the balancing test to the wrong interests.

First, the tax court mistakenly narrowed the legal issue to only whether the county's withholding of the Other Taxpayers' information from EOP had been "wrongful." I acknowledge that the EOP may have contributed to this mistake by including, at the end of its argument, citation to cases where motions in limine were granted as sanctions for discovery violations.[3] But those citations did not define EOP's argument, which by this time had been fully developed.

When EOP initially made its motion to compel, it did so alternatively, seeking a motion in limine to preclude the county from using the Other Taxpayer information if the county was not compelled to produce it to EOP. The argument for this alternative relief was clear—if the MGDPA precluded the use of this information by EOP, it would likewise preclude

3. *See, e.g., State v. Schwartz,* 447 N.W.2d 422, 427 (Minn.1989) (error to admit lab test where underlying data not disclosed); *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn. 1990) (excluding evidence that had been requested and court-ordered, but not disclosed in discovery).

the use of it by the county. The tax court denied EOP's motion to compel but did not address EOP's alternative request. EOP then brought a separate motion in limine, based squarely on the fact that the tax court had denied its motion to compel. EOP argued that the application of the balancing test to the county would lead to the same conclusion, that the information must be kept confidential. Further, EOP argued that its due process rights would be violated if the court applied a different legal standard to permit use by the county. EOP suggested that this would place the county in a position to act as "gatekeeper" and that the county may decide to not use relevant information because it is "contradictory or detrimental to [the county's] position, without having to account for such action through discovery or during cross-examination at trial." [4] That argument reflects the precise issue before us but the tax court never addressed it.

Second, the tax court misinterpreted EOP's motion in limine in another, perhaps more fundamental, way. For the reasons discussed above, the correct framework for the analysis of EOP's motion in limine would have been this—the county, who previously objected to the use of Other Taxpayers' information by EOP, now proposes to publicly disseminate selected parts of that same information and,

with their roles reversed as a result of the tax court's denial of EOP's motion to compel, EOP now objects under the MGDPA to the public use by the county of any of that information. The appropriate application of the MGDPA's balancing test, thus, would have been to ask whether the benefit to the county of the use of Other Taxpayers' information outweighs the harm to the Other Taxpayers and the tax collection system. Unfortunately, the tax court did not address this dispositive question. If it had, the answer would surely have been that the county has no greater or different right to the public use of Other Taxpayers' nonpublic information than EOP.

The tax court did not answer this critical question because it restructured EOP's motion in limine to be a motion to compel the production of that part of the Other Taxpayers' information that the county proposed to use at trial. But EOP did not make such a motion, and such a motion assumes away the critical issue—whether the county as a party could use the nonpublic information of Other Taxpayers without going through the balancing test of the MGDPA.

Having assumed away that critical issue, the application of the balancing test to the reformulated motion was too simple. If you assume that the county is permitted to

4. EOP would have better supported that argument by citation to *Swanson v. Domning*, 251 Minn. 110, 117–18, 86 N.W.2d 716, 722–23 (1957) (stating that the holder of a privilege cannot invoke the privilege as to some information but testify to other privileged information); *Doll v. Scandrett*, 201 Minn. 316, 320–22, 276 N.W. 281, 283 (1937) (holding that, where the plaintiff was examined by two physicians as a unitary matter, he could not permit one to testify but retain the medical privilege as to the other); *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir.1998) ("Workman cannot selectively assert the privilege to block the introduction of information harmful to his case after introducing other

[privileged information] for his own benefit."); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."); *Sedillos v. Board of Education*, 313 F.Supp.2d 1091, 1093 (D.Col.2004) (holding that a party cannot claim reliance on advice of counsel and then invoke the privilege to prevent the other party from exploring fully the advice); *see also State v. Fontana*, 277 Minn. 286, 290, 152 N.W.2d 503, 505–06 (1967) (summarizing the civil and criminal cases determining that evidentiary privileges can be used as a shield but not a sword).

use selected Other Taxpayers' information at trial, then EOP's need for access to that information necessarily increases. And, if you assume that the county is permitted to use the information at trial, the harm to Other Taxpayers is likewise assumed to be inevitable and the only question is whether it can be minimized by a protective order.

If the tax court had made the appropriate analysis under the MGDPA, it necessarily would have granted EOP's motion in limine, based on these conclusions:

a. The information that the county proposed to use at trial is relevant and thus "releasable" under the MGDPA.

b. The benefit to the county in using the information is no greater than the benefit that would have accrued to EOP, and is therefore outweighed by the harm to the Other Taxpayers and the tax collection system.

c. Because that harm could not be sufficiently minimized by a protective order when EOP sought the information, it similarly could not be adequately minimized when the county seeks to use the information.

Because the failure of the tax court to perform this analysis and to grant EOP's motion in limine resulted from a misapplication of the MGDPA, it was an abuse of discretion that warrants reversal.

### B. The MGDPA operates as a shield, not a sword.

Even if we were to focus only on the issue as reformulated by the tax court, I would still conclude that the court abused its discretion by, in effect, delegating the analysis of the MGDPA to the county and allowing the county to use it as both a shield and a sword.

Although the tax court denied EOP's motion in limine and allowed the county to use Other Taxpayers' information at trial, it could have avoided the prejudice to EOP if it had ordered the county to produce to EOP, under an appropriate protective order, all of the relevant Other Taxpayers' information that was available to the county's expert, whether used or not. In other words, the tax court could have required the county to make a choice: if it wanted to use some Other Taxpayers' information it would be deemed to have waived its objection to the production of all such information; or, if it continued to object to the production of all such information, it would be precluded from using some information.

Although the protections of the MGDPA are not necessarily equivalent to those applicable to an evidentiary privilege, the principle in privilege law, that a party may not selectively assert the privilege for some privileged information but affirmatively use other privileged information, reflects considerations of fundamental fairness that should also apply to the MGDPA. As applied here, the county was free to object to the production of any Other Taxpayers' information to EOP, but by doing so, the county precluded itself from using any of that information. Or, conversely, if the county persisted in using some of the information, such use should result in a waiver of its objection to EOP's motion to compel.[5]

---

5. Of course, the County is not solely representing its own interests because it is responsible also to protect the interests of the Other Taxpayers. Thus, in this context, the appropriate conclusion is either that the County was foreclosed from the affirmative use of the Other Taxpayers' information or the County must produce to EOP all of the relevant Other Taxpayers' information and seek to minimize the harm to the Other Taxpayers through a protective order.

This result follows from analogy to the privilege cases. In *Swanson* we quoted with approval the following ruling from *Steen v. First Nat'l Bank*, 298 F. 36, 41 (8th Cir.1924):

"The owner of the privilege of preventing the disclosure of confidential communications cannot, after testifying to or about them, or to or about any substantial part of them, without claiming his privilege, or objecting to testify on the ground of his privilege, invoke the privilege to prevent other parties to the communications from testifying to them. He cannot by his silence lay down the shield of his privilege, and assail another with the sword of his own testimony to the privileged communications, and, when his adversary essays to defend himself, or to attack him by his version of the testimony, or by the testimony of other parties or witnesses to such communications, again seize the shield of his privilege and shut out all testimony as to the confidential communications but his own. He has waived his privilege and such waiver is in no sense contrary to public policy; indeed, it is in the interest of truth and justice."

251 Minn. at 118, 86 N.W.2d at 722–23. Similarly, most cases hold that "discovery is permissible of privileged matter to the extent it is contemplated that the privilege will be waived at trial." 8 Charles Alan Wright, et al., *Federal Practice and Procedure: Civil 2d* § 2016.2, at 247 (1994). In the same vein, when the county made clear that it intended to use Other Taxpayer information at trial, the tax court should have determined either that the county's previous objection under the MGDPA precluded such use or that the county's proposed use waived the MGDPA objections and compelled the production of the relevant Other Taxpayers' information to EOP.

The majority opinion suggests that the "third-party intervenors had conceded that the county could use the information at trial." I do not read the Intervenor's comments as providing that concession and, in any event, I do not agree that such a concession would authorize the county to selectively apply the MGDPA to some non-public information but not to other non-public information. The question of the proper application of the MGDPA is for the court and the only effect of such a concession by the Other Taxpayers is that it increases the likelihood that a protective order would minimize their harm.

I would reverse and remand the decision of the tax court for a new trial, after the tax court determines either that the county is precluded from using Other Taxpayers' information at trial or the county is required to produce all relevant Other Taxpayers' information to EOP before trial.

PAGE, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Hanson.